STATE OF WEST VIRGINIA

*v.*

STEPHEN M. MOORE

(No. 13444)

Decided March 18, 1975.

*Frank M. Armada* for plaintiff in error.

*Chauncey H. Browning,* Attorney General, *Richard E. Hardison,* Deputy Attorney General, *David P. Cleek,* Assistant Attorney General, for defendant in error.

CAPLAN, JUSTICE:

At the November Term, 1972, of the Circuit Court of Putnam County, the defendant, Stephen M. Moore, was indicted by the grand jury of that county for the crime of breaking and entering. To the indictment the defendant entered a plea of not guilty and upon trial the jury

found him "guilty as charged in the within indictment". The defendant's motion for a new trial was denied and he was sentenced to confinement in the state penitentiary for an indeterminate term of not less than one year nor more than ten years. This is an appeal from the judgment imposing that sentence.

The record reveals that on December 8, 1971, at approximately 11:30 P.M., a storeroom occupied by the Pat I. Dawson Appliance Store was illegally entered and three color television sets were stolen therefrom. Mr. Dawson, the owner and operator of the store, testified at the trial that his residence was near his place of business; that on the night in question, at about 11:30, he looked out of his bedroom window and saw a truck parked near his store; that he observed two boys in the truck; that "I got my gun and went down to the store"; and that one of the persons near the truck was the defendant, Stephen M. Moore. This witness testified that there were several other businesses in the immediate vicinity of his store, that the whole area was well lighted and that he had no difficulty observing the activities of the two boys.

Mr. Dawson further related that when he approached his store, pointed his shotgun at them and told them to stop, one did stop near the truck and the other crawled under the truck. The following testimony relates this incident:

Q. How close were you to the man who came out from under the truck?

A. When he came out here I was probably within six feet and the rest of the time probably twelve feet.

Q. Is that man in the courtroom today?

A. Yes, sir.

\* \* \*

Q. Let the record show he is pointing to the defendant.

Mr. Dawson said that he talked to the defendant for approximately five minutes before the defendant and his partner escaped in the truck.

Mr. Dawson's testimony, including that relating to his observations noted above, was the only direct evidence of the guilt of the defendant. The defendant took the stand in his defense and denied that he participated in the offense. The television sets were never recovered. Other evidence was introduced by the defense relating to two friends of the defendant, one of whom allegedly resembled the defendant and who was alleged by one witness to have admitted to the commission of the subject breaking and entering.

During the trial Mr. Dawson made an in-court identification of Stephen M. Moore as the one he confronted at his store on the night of December 8, 1971. The legality of such in-court identification is a most important consideration on this appeal.

Counsel for the defendant made a pretrial motion that Mr. Dawson's in-court identification of the defendant be suppressed. The grounds for this motion were that the use of photographs of the defendant and the identification of the defendant in a police lineup were overly suggestive and that the defendant was not afforded a right to counsel during said lineup. The prosecuting attorney related to the court that the in-court identification of the defendant would be based on Mr. Dawson's face to face confrontation with the defendant at the scene of the crime and would not relate in any way to the police lineup. Pursuant to the motion the court held a hearing in its chambers.

The only witness called by the defendant at the suppression hearing was Pat Dawson. The following testimony was adduced by the interrogation of counsel for the defendant:

Q. At the time of the breaking and entering did you have occasion to see the persons who were involved at that time?

A. Yes, I did.

Q. The persons that were involved, where did you see them?

A. As they came out of the store and beside the truck they were driving.

Q. Did you have occasion to approach them?

A. Yes, I was within ten feet of them.

Q. Did you have occasion to see them closely?

A. Yes.

Q. Are you in a position to tell us at the time who they were?

A. I can identify one of them here. This man right here.

Judge: Let the record show the witness is designating the accused Stephen M. Moore who is seated in chambers with counsel.

Mr. Dawson then testified that in August or early September, 1972 Trooper Kilburn asked him to go with him to the Kanawha County jail for the purpose of determining whether he could identify one of the men who broke into his store. Relative to this testimony the following was adduced:

Q. What was the purpose of your going there?

A. To see if I could identify persons that broke in my store.

Q. Is that what you were told by Trooper Kilburn before you went down there?

A. Yes.

Q. Did he indicate to you they had somebody down at jail that they felt was the party that broke in to your store?

A. Yes.

\* \* \*

Q. When you went to the Kanawha County jail in August did anybody indicate to you that this person was the person they believed to have broken into your premises?

A. No, sir.

Q. How many people were lined up?

A. Five.

*  *  *

Q. Do you remember the name being told to you ... as Stephen Moore being there? Did Trooper Kilburn say he was going to be in the line-up ... anything?

A. They was going to bring five prisoners in the lineup and I assumed he would be there ... I didn't know.

Q. Did you have any difficulty with your identification at that time?

A. No.

Q. Did the fact you had identified Mr. Moore at the time of the lineup aid you in here today in your identification of Mr. Moore?

A. He is the same person.

Q. Do you identify him here today by the fact you had seen him at the line up in Kanawha County?

A. I guess.

The following testimony was adduced on interrogation by the Prosecuting Attorney:

Q. Your identification is based upon what? You say "this man is the man". What would that be based upon?

A. From the time I seen him first. This was the night he broke in the store.

*  *  *

Q. Would it be from the line up or the time he broke into your store?

A. From the time he broke into the store. The picture was there. I didn't have any trouble in the line up.

Testimony was further adduced at that hearing relating to photographs of the defendant. It appears therefrom that two photographs of the defendant were shown to Mr. Dawson in June or July, 1972 and Mr. Dawson testified that he could not identify the defendant from such photographs. There was some confusion in the testimony as to whether the defendant had a different appearance, such as having long hair and a beard at one time or another. He again testified in a definite manner that he remembered the defendant from the time of the crime.

Upon the evidence adduced at this suppression hearing and upon the state's representation that the identification would be based only upon the confrontation at the time of the breaking and entering, the court denied the motion to suppress the in-court identification. It is pertinent to note that at no time during the trial was the police lineup mentioned although the photographs of the defendant were handed to the jury.

In the defendant's petition for appeal the following errors are assigned:

I. The court erred in not suppressing the in court identification of the petitioner since at the original lineup identification the petitioner was deprived and denied of his right to counsel as guaranteed him under the sixth amendment.

II. The court erred in not awarding the petitioner a new trial since the State failed to prove by clear and convincing evidence that the in court identification was based upon observations of the accused independent of the prior line up identification.

The defendant contends that the in-court identification should have been suppressed for the reason that it was tainted by an illegal lineup procedure. The illegality of which he complains is the failure to have furnished him the assistance of counsel at the lineup at which Mr. Dawson identified him. That the right to the assistance of counsel is a fundamental right guaranteed by the State and Federal Constitutions to an accused at all critical stages of prosecution is no longer in doubt. *Gideon v. Wainwright*, 372 U.S. 335, 83 S. Ct. 729, 9 L.Ed. 2d 799 (1963); *State ex rel. May v. Boles*, 149 W. Va. 155, 139 S.E.2d 177 (1964). That right, however, attaches only "at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Kirby v. Illinois*, 406 U.S. 682, 92 S. Ct. 1877, 32 L. Ed. 2d 411 (1972). It does not attach during a routine police investigation but only when an accused becomes the focal point of a prosecutive stage.

The record reveals in the instant case that eight or nine months after the burglary of his store, Mr. Dawson was requested by the police to come to the Kanawha County jail to observe a lineup of men and to identify, if he could, the man he had confronted at the scene of the subject breaking and entering. The defendant was in jail on that occasion on another charge, but the police, still in the process of investigating the burglary, called on Mr. Dawson to assist in the identification. The investigation was still routine and certainly not at a prosecutive stage.

We are of the opinion that the defendant's assignment of error, alleging that the police lineup was illegal because he was not assisted by counsel on that occasion, is without merit in the circumstances of this case. As noted in *United States v. Wade*, 388 U.S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149 (1967), it is always necessary to scrutinize any pretrial confrontation of the accused to determine whether the presence of his counsel is necessary to preserve his basic right to a fair trial. It is not, however, essential to the guarantee of an accused's constitutional

rights that he be afforded the assistance of counsel at every stage of the investigation—from the commission of the crime to the time of his arrest.

The Court, in *Kirby v. Illinois, supra,* cogently demonstrates by the following language the point at which an accused becomes entitled to the assistance of counsel:

> The initiation of judicial criminal proceedings is far from a mere formalism. It is the starting point of our whole system of adversary criminal justice. For it is only then that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law. It is this point, therefore, that marks the commencement of the 'criminal prosecutions' to which alone the explicit guarantees of the Sixth Amendment are applicable.

In the instant case the lineup, to which objection is made by the defendant, was conducted by the police as a routine part of its investigation. The record does not reveal the extent of any further investigation of this defendant's participation in this crime. The lineup was conducted in August or early September, 1972, but he was not indicted until the November Term, 1972, of the Circuit Court of Putnam County. Clearly, this lineup occurred prior to the time that adversary judicial proceedings were initiated against the defendant.

In *United States v. Wade, supra,* and *Gilbert v. California,* 388 U.S. 263, 87 S. Ct. 1951, 18 L. Ed. 2d 1178 (1967) the lineup complained of occurred after the defendants were indicted and counsel was appointed. There can be no doubt that at that time the prosecutorial forces of organized society had been unleashed against them; that such post-indictment lineups were a critical stage of their prosecution and that at such critical stage they were entitled to counsel to assist them. Cf. *United States v. Ash,* 413 U.S. 300, 93 S. Ct. 2568, 37 L. Ed. 2d 619 (1973).

As noted, in the case under consideration the lineup occurred pursuant to and during a routine investigation of the crime and prior to the indictment of the defendant. No adversary judicial criminal proceedings having been initiated against him at that time, the case had not reached the prosecutive stage and the absence of counsel to represent him at such lineup did not render that procedure illegal.

The defendant further asserts on this appeal that the court erred in refusing to suppress the in-court identification, his ground therefor being that the state failed to prove that such identification was based on an observation of the accused, independent of that made at the lineup. In the trial of this case no evidence was adduced relating to the lineup identification, this matter having been disposed of at a pretrial suppression hearing. Therefore, "a *per se* rule of exclusion of courtroom identification would be unjustified." *United States v. Wade, supra.*

Denial of a motion to suppress courtroom identification, as was done in this case, should not in itself form a basis for a new trial at which such identification evidence will be excluded without first giving the State the opportunity to establish by clear and convincing evidence that the in-court identification was based upon observation of the accused other than at the lineup. *United States v. Wade, supra.* See *Murphy v. Waterfront Commission,* 378 U.S. 52, 84 S. Ct. 1594, 12 L. Ed. 2d 678 (1964); *Nardone v. United States,* 308 U.S. 338, 60 S. Ct. 266, 84 L. Ed. 2d 307 (1939). Cf. *Neil v. Biggers,* 409 U.S. 188, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972). Thus, we must carefully analyze the evidence to determine whether the in-court identification was of an origin independent of the lineup.

Earlier in this opinion we quoted much of the evidence adduced from Mr. Dawson in relation to his observation of the defendant at the scene of the crime. This evidence, together with other circumstances revealed by an examination of the record, provides the clear and con-

vincing proof required by *Wade, supra*, that the in-court identification of the defendant by Mr. Dawson was based upon his observations of him at the scene of the burglary and not upon his observations at the lineup. We are of the opinion, therefore, and so hold, that the in-court identification evidence, considering the "totality of the circumstances" of this case, was proper and admissible.

The defendant contends that his identification was a direct result of unnecessarily suggestive procedures followed by the State. He claims that the display of two photographs of him to Mr. Dawson prior to the lineup resulted in the lineup identification of him. Mr. Dawson's testimony revealed that he could not identify the defendant from the photographs; nor does the record reveal that the police made any comment or undertook in any manner to suggest who the defendant was in the lineup of five men.

Being of the view that this defendant received a trial free of prejudicial error, the judgment of the Circuit Court of Putnam County is affirmed.

*Affirmed.*