STATE OF WEST VIRGINIA

*v.*

KERMIT STOLLINGS

(No. 13335)

Decided March 25, 1975.

*Leonard H. Higgins* for plaintiff-in-error.

*Chauncey H. Browning*, Attorney General, *Richard E. Hardison*, Deputy Attorney General, *E. Leslie Hoffman, III*, Assistant Attorney General, for defendant-in-error.

NEELY, JUSTICE:

This is an appeal by the defendant, Kermit Stollings, from a conviction of armed robbery in the Circuit Court of Lincoln County. We affirm.

At approximately 4:30 a.m. on the morning of August 10, 1970 Irvin Vance was opening his gasoline service station in Lincoln County, West Virginia. After he had turned on approximately half of the lights in the station and store, three men drove into the station lot and asked to have their car filled with gas. The occupants then asked if Mr. Vance had soft drinks for sale, and when Mr. Vance said "yes" the occupants of the car went into the service station. After filling the car Mr. Vance followed the men into the small general store

which was part of the station. The men asked to purchase some cheese, and when Mr. Vance opened his money box to give the men change from the ten dollar bill they had given to him to pay for the soda and cheese, two of the men grabbed him and held him tightly. A third man, who Mr. Vance later identified as the defendant in this action, held a gun on Mr. Vance and took his wallet from his person and took the money box containing food stamps, checks, and cash. The men then released Mr. Vance, entered their car, and drove off.

After the robbery the police asked Mr. Vance to identify his assailants from photographs of various suspects, but he was unable to do so. Approximately one year after the incident the defendant was arrested and detained in the Logan County Jail where he was identified by Mr. Vance as the man who held the gun on him and helped perpetrate the robbery. There is no question that the circumstances at the Logan County Jail under which Mr. Vance identified the defendant were highly suggestive. It appears that the defendant was brought into the jail in the company of police officers and that he was obviously the man which Mr. Vance was expected either to identify or to exonerate. At the time of the police station identification the defendant had not been indicted and, accordingly, he was not represented by either retained or appointed counsel.

I

The Court is required in this case to pass upon the admissibility of Mr. Vance's in-court identification of the defendant as the man who perpetrated the robbery in question. The trial court granted a motion to strike the evidence concerning the out-of-court identification and instructed the jury to disregard the out-of-court identification and to consider only the in-court identification. The defendant maintains that the evidence of the out-of-court identification was so prejudicial that the limiting instruction was unavailing and that a mistrial should have been granted.

We disagree. The landmark case on the subject of suggestive lineup procedures and out-of-court identification is *Neil v. Biggers*, 409 U.S. 188, 93 S. Ct. 376, 34 L. Ed. 2d 401 (1972) which concerned a state conviction for rape in which the victim identified the assailant at a "showup" which consisted of two detectives walking the defendant past the victim. At the victim's request, the police directed the defendant to say "shutup or I'll kill you." The Supreme Court held that under the totality of the circumstances the identification was not so suggestive as to constitute a denial of due process. The Supreme Court then commented on due process rights in an identification as follows:

> "Some general guidelines emerge from these cases as to the relationship between suggestiveness and misidentification. It is, first of all, apparent that the primary evil to be avoided is 'a very substantial likelihood of irreparable misidentification.' *Simmons v. United States*, 390 US, at 384, 19 L. Ed. 2d 1247, 88 S. Ct. 967. While the phrase was coined as a standard for determining whether an in-court identification would be admissible in the wake of a suggestive out-of-court identification, with the deletion of 'irreparable' it serves equally well as a standard for the admissibility of testimony concerning the out-of-pocket identification itself. It is the likelihood of misidentification which violates a defendant's right to due process, and it is this which was the basis of the exclusion of evidence in *Foster* [*Foster v. Calif.*, 394 U.S. 440, 89 S. Ct. 1127, 22 L. Ed. 2d 402 (1969)]. Suggestive confrontations are disapproved because they increase the likelihood of misidentification, and unnecessarily suggestive ones are condemned for the further reason that the increased chance of misidentification is gratuitous."

In the case at bar the in-court identification was positive and completely unshaken by cross-examination. In addition, the prosecuting witness had declined earlier to identify any suspect from photographs and demonstrated at trial a high degree of certainty with regard to the

identification of the defendant. Furthermore, this is not a case in which a witness caught a fleeting glance of a fleeing suspect, nor was the witness a surprised spectator at a crime in which he was not involved. The defendant wore neither a mask nor a disguise, and the premises were adequately lighted during the course of the robbery. As in the case of *Neil v. Biggers, supra*, the prosecuting witness in the case at bar was face-to-face with the defendant for several minutes while the defendant held a gun to the witness's stomach. While the Court disapproves any identification technique which, absent manifest necessity, is in the slightest degree suggestive,[1] the defendant is entitled under the due process clause of the State and Federal Constitutions only to a fair trial; he is not entitled to a perfect trial. Under the "totality of the circumstances" of the in-court identification the Court finds no reversible error in the in-court identification. See *State v. Moore*, ___ W. Va. ___, 212 S.E.2d 608 (1975). Further, with the trial court's ruling on the out-of-court identification, we do not find sufficient prejudice to warrant a reversal on that ground.

## II

The defendant next assigns as error the court's ruling which admitted, over objection, evidence with regard to the defendant's prior convictions. On cross-examination of the defendant, the State elicited the following testimony:

Q. Have you ever been convicted of a felony, Mr. Stollings?

A. Yes, sir; I have.

Q. What have you been of?

A. (interposing) I was convicted in Wyoming County

MR. WILKINSON: (interposing) Objection, your honor.

---

[1] See *Stoval v. Denno*, 388 U.S. 293, 87 S. Ct. 1967, 18 L. Ed. 2d 1199 (1967).

THE COURT: What is your grounds.

MR. WILKINSON: Well, he is not being tried for former conviction.

MR. GRIFFITH: That is not the purpose of this question.

THE COURT: I realize that. The Court is going to overrule your objection.

Q. Answer the question again.

A. I say I was convicted in Wyoming County for grand larceny.

Q. What is grand larceny?

A. Taking something that don't belong to you, I guess.

Q. When was that?

A. That was in 1970.

Q. After November, 1970?

A. Well, I was convicted in '71.

Q. '71?

A. Yes.

Q. You remember when the offense was committed, of which you were convicted?

A. Not exactly.

Q. Is that the only felony you were every [sic] convicted of?

A. Yes, sir.

Then later, after interrogation by the court, the State asked the following questions on further cross-examination:

Q. Mr. Stollings on that conviction up in Wyoming County, what was the original charge on that?

A. Pardon me.

Q. What was the original charge in Wyoming County?

A. The one I was convicted on?

Q. What was the charge as the grand jury returned the indictment?

MR. WILKINSON: I object.

THE COURT: I am going to sustain your objection.

The rule in West Virginia has always been that former convictions may be admitted into evidence for the purpose of testing the witness's credibility, *State v. Friedman*, 124 W. Va. 4, 18 S.E.2d 653 (1942); *State v. Taylor*, 130 W. Va. 74, 42 S.E.2d 549 (1947); and *State v. Ramey*, W. Va., 212 S.E.2d 737, (decided March 11, 1975), but not for the purpose of impugning his character, *State v. McArdle*, W. Va., 194 S.E.2d 174 (1973). The evidence with regard to a former conviction was admissible; the evidence with regard to the original charge before the former conviction was inadmissible and the court so held. The defendant was entitled to a limiting instruction telling the jury that a former conviction was admissible for the purpose only of testing the witness's credibility, and not for the purpose of demonstrating bad character. However, in this case the defendant did not object with particularity nor did he request a limiting instruction, which was certainly within the area of acceptable trial tactics. *State v. Thomas*, W. Va., 203 S.E.2d 445 (1974). Accordingly the Court finds no error in the admission of this evidence.

### III

The last assignment of error worthy of discussion is the defendant's contention that the judgment was against the weight of the evidence. Four defense witnesses, namely the defendant's brother, his brother's wife, and two persons not related to the defendant, testified that the defendant was elsewhere during the time of the robbery. The defendant maintains that the alibi testimony was not discredited on cross-examination and,

therefore, a reasonable doubt must exist concerning the defendant's participation in the alleged crime. In addition, the defendant himself took the stand and denied participation in the crime and testified with regard to his presence elsewhere on the night in question. If this Court were physically to weigh the parts of the record supporting defendant's defense as opposed to the parts supporting the State's case, namely the State's eyewitness identification by the victim, the Court would find that the evidence physically weighs more heavily in favor of defendant. However, traditionally mere volume of testimony is not an adequate measure of the probative value of each party's evidence. In order to secure a conviction in a criminal case the State must convince twelve independent minds that the State has proved its case beyond a reasonable doubt. The eyewitness identification was very strong, and the jury had an opportunity to evaluate the demeanor of the witnesses on the stand and to resolve among themselves the conflicts in the testimony. There has been no allegation nor any showing in the record of improper influence upon the jury nor of an atmosphere of prejudice or ill-will. Accordingly the Court holds that the jury's verdict was supported by the evidence.

Therefore, the judgment of the Circuit Court of Lincoln County is affirmed.

*Affirmed.*