320 S.E.2d 134

**STATE of West Virginia**

v.

**William E. BOYKINS.**

No. 16018.

Supreme Court of Appeals of West Virginia.

July 12, 1984.

Jerry R. White, Logan, for appellant.

Janet Frye Steele, Asst. Atty. Gen., Charleston, for appellee.

PER CURIAM:

William E. Boykins appeals from a final judgment of the Circuit Court of Logan County sentencing him to fifteen years imprisonment upon a conviction of aggravated robbery. W.Va. Code, 62–2–12. Finding no basis for reversal of the conviction, we affirm.

I.

On January 26, 1982, the T & T Investment Company, d/b/a the Logan Dairy Queen in Logan County, West Virginia, was robbed at gunpoint by a lone male assailant. The state police received an anonymous tip that Boykins was the culprit, and two troopers located him on January 28. He agreed to go to the state police barracks and cooperate in the investigation by permitting his photograph to be taken for use in photographic array that day. Two eyewitnesses selected Boykins' photograph from the array. Later that day Boykins was in two lineups.

Boykins was subsequently indicted and tried in August, 1982, but when the jury was unable to reach a verdict a mistrial was declared. In that trial only one eyewitness identified Boykins as the perpetrator. A second trial was held in December, 1982 and, after approximately an hour and a half of deliberations, the jury returned a verdict of aggravated robbery. During the second trial both eyewitnesses testified.

Boykins' principal assignment of error is that he was deprived of due process by admission of unreliable eyewitness identification testimony that was the product of pre-trial identification procedures that were both unduly suggestive and unnecessary. He also contends that his constitutional right to counsel was violated when he was forced to participate in a lineup after he had stated that he wanted to talk with an

attorney. He further argues that the State withheld exculpatory photographs taken of the lineups, violating his due process rights.

## II.

■ We begin with Boykins' contention that he was denied his right to counsel when he was placed in a lineup without benefit of counsel. Boykins testified that he requested counsel prior to the lineups while in a small room at the jail and that he was threatened with bodily harm if he refused to participate. The state troopers involved testified during the suppression hearing and at trial that they did not threaten Boykins at anytime in order to force him to participate in a lineup, and that at no time did Boykins request the assistance of counsel. The evidence thus clearly supports a factual finding that Boykins did not request counsel prior to the lineup. But even if he had, no different result would obtain. We decided in Syllabus Point 1 of *State v. Moore,* 158 W.Va. 576, 212 S.E.2d 608 (1975) that:

> "An accused is not constitutionally entitled to the assistance of counsel when placed in a lineup pursuant to and during a routine investigation of a crime and prior to the initiation of adversary judicial criminal proceedings against him."

No adversary judicial criminal proceedings triggering his right to counsel had been instituted against Boykins prior to the lineups. *State v. Gravely,* 171 W.Va. 428, 299 S.E.2d 375 (1982). We note that Boykins was not arrested after the lineup and was given a ride home by a state trooper. Boykins is thus not entitled to exclude the

evidence about his identification at pre-trial lineups based on a denial of the right to counsel.

## III.

■ We are once again confronted with a due process challenge to admissibility of eyewitness identification testimony.[1] As our cases have recognized, the focus of concern is on the reliability of the testimony. If after examining the totality of circumstances the identification evidence has sufficient indicia of reliability, despite the presence of suggestive procedures tending to negate reliability, the evidence is admissible. This is true as to both out-of-court and in-court identification evidence. These principles are summarized succinctly in *State v. Boyd,* 167 W.Va. 385, 280 S.E.2d 669, 678 (1981):

> "In determining the admissibility of out-of-court identifications we have consistently followed the test of *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). *See, e.g., State v. Rickman,* 167 W.Va. 128, 278 S.E.2d 880 (1981); *State v. Williams,* 162 W.Va. 348, 249 S.E.2d 752 (1978); *State v. Kennedy,* 162 W.Va. 244, 249 S.E.2d 188 (1978); and *State v. Casdorph,* 159 W.Va. 909, 230 S.E.2d 476 (1976). Our formulation of the *Biggers* test was set out in *State v. Kennedy, supra,* as follows:
>
> > 'In determining whether an out-of-court identification of a defendant is so tainted as to require suppression of an in-court identification a court must look to the totality of the circumstances and determine whether the

---

**1.** Since the United States Supreme Court created a due process right to exclude identification testimony because of unnecessarily suggestive pre-trial identification procedures in *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), we have had occasion in over twenty cases to consider a due process challenge to identification evidence. *See State v. Gravely,* 171 W.Va. 428, 299 S.E.2d 375 (1982), n. 11 for a partial collection. In nearly all cases, the defense sought to preclude admission of an in-court identification of the accused based on allegedly unnecessarily suggestive identification procedures employed by law enforcement authorities. The Supreme Court has upheld only

one due process challenge in a case involving a lineup and subsequent one-on-one confrontation. *Foster v. California,* 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969). We have reversed two convictions on due process grounds. *State v. Williams,* 162 W.Va. 348, 249 S.E.2d 752 (1978) (defendant identified by robbery victim at scene of arrest after being told that his money and receipts were found in possession of the men in the car); *State v. Kennedy,* 162 W.Va. 244, 249 S.E.2d 188 (1978) (defendant identified by store owner at one-on-one confrontation at police station while handcuffed after owner was told defendant was suspect).

identification was reliable, even though the confrontation procedure was suggestive, with due regard given to such factors as the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.'

Syl. pt. 1, *State v. Kennedy,* 162 W.Va. 244, 249 S.E.2d 188 (1978), citing Syl. pt. 3, *State v. Casdorph,* 159 W.Va. 909, 230 S.E.2d 476 (1976). Although the test in *Kennedy* is framed in terms of whether an out-of-court identification is so tainted as to require suppression of a subsequent in-court identification, footnote nine of the majority opinion in *Manson v. Brathwaite,* 432 U.S. 98, 106–107, 97 S.Ct. 2243, 2249, 53 L.Ed.2d 140, 149 (1977), which clarified the application of the *Biggers* test, indicates that the same criteria should also apply in determining whether the out-of-court identification itself should be suppressed."

*See State v. Kennedy,* 162 W.Va. at 246, n. 1, 249 S.E.2d at 190, n. 1.

Before turning to the application of the *Biggers* reliability factors, we must relate the relevant background facts and explain our conclusions about the pre-trial identification procedures used in this case.

■ A photographic array was shown separately to the two eyewitnesses, Ms. Lillian Curry, a cashier, and Mrs. Odas Rose, the mother of one of the owners of the Dairy Queen. Both witnesses selected Boykins' photograph as the robber, but neither witness was positive. Five photographs are available for our examination; two of Boykins, two of another person, and one of a third person. The photographs of the other two persons are sufficiently similar in appearance to Boykins that the array cannot be considered so unduly suggestive as to create a very substantial likelihood of irreparable misidentification. As we said in Syllabus Point 6 of *State v. Harless,* 168 W.Va. 707, 285 S.E.2d 461 (1981):

"Most courts have concluded that a photographic array will not be deemed excessively suggestive as long as it contains some photographs that are fairly representative of the defendant's physical features. The fact that some of the photographs are dissimilar to the defendant's appearance will not taint the entire array."

*See also, State v. Watson,* 173 W.Va. 553, 318 S.E.2d 603 (1984); *State v. Buck,* 170 W.Va. 428, 294 S.E.2d 281 (1982).

We also observed in *Harless* that inordinate suggestiveness can arise from both the photographs themselves or "the manner in which they are presented to the identifying witness." *Id.,* 168 W.Va. at 716, 285 S.E.2d at 467. Here the array was shown to the witnesses separately, and no evidence was presented indicating the state trooper who displayed them said or did anything improper to cause the witnesses to select Boykins' photograph. Though the photographic array utilized falls short of the ideal in terms of the number of photographs of different persons that it contained, it was not excessively suggestive.

■ The lineups, however, were conducted in a manner that was manifestly unfair and overly suggestive. We must strongly disagree with the trial court's conclusion that the lineups were reasonably proper. During the suppression hearings and at trial, the defense presented the testimony of four of the five young black males who, in addition to Boykins, participated in the lineup. The picture that emerges from their testimony, as well as from testimony of the State's witnesses, is that Boykins was the only person in the lineup who wore a dark blue or black toboggan: the type of clothing the culprit allegedly wore. One person in the lineup wore a light brown or beige toboggan, while the others wore baseball caps. In addition, all but one of the people in the lineup was taller than Boykins. It also appears that Boykins was the only person whose picture was in the photo array that was also in the lineup. The situation here approaches, if not equals, the degree of suggestivity that was present in *State v. Williams,* 162 W.Va.

348, 249 S.E.2d 752 (1978), and *State v. Kennedy*, 162 W.Va. 244, 249 S.E.2d 188 (1978), where we reversed the convictions. Utilization of these procedures was unduly and unnecessarily suggestive and should never have occurred. The procedures virtually guaranteed a due process challenge to admissibility of the identification evidence.

█ The question presented here then is whether the eyewitnesses' identification was reliable despite the suggestive procedures? We turn to an analysis of the reliability factors identified in *Biggers, supra:*

1. Opportunity to view. Lilliam Curry was working behind the counter when a young black male entered the Dairy Queen and told her to "give it to him". She looked at him, but was not certain what he wanted until she looked at him again and saw he had a gun. During this time Mrs. Odas Rose was standing about fourteen to fifteen feet away observing the culprit. Because Ms. Curry became upset and was not certain what to do, Mrs. Rose told her to hit the "no sale" button on the cash register and give the culprit the money. Ms. Curry took about $200 in cash from the register, placed it on the counter, and immediately turned and ran to the rear of the business. The entire episode lasted only two or three minutes. Ms. Curry testified that she looked closely at the perpetrator's face from a distance of two or three feet. Nothing suggests that the lighting in the Dairy Queen was not adequate to get a good look at the person. Mrs. Rose also testified that she saw the man's facial characteristics, but was looking at Mrs. Curry during most of the robbery.

Both witnesses, particularly Ms. Curry, had a good opportunity to view the perpetrator during the robbery. This circumstance alone distinguishes the present case from our decisions in *State v. Williams, supra,* and *State v. Kennedy, supra,* where the eyewitnesses had only an extremely limited opportunity to view the perpetrator. In *Williams* the eyewitnesses had only a glancing, peripheral view of the accused, while in *Kennedy* the eyewitness was never closer than forty to sixty feet from the culprit and never saw his face.

2. The degree of attention. Ms. Curry testified that because she did not understand what the robber wanted when he first said "give it to me", she paid particular attention to the man's face until she saw he was armed. She was hardly a casual or passing observer. Mrs. Rose also had good reason to pay particular attention to the appearance of the perpetrator.

3. The accuracy of the description. Ms. Curry gave a description to Trooper Gibson within a relatively brief period of time after the event occurred. She described him as a young black male, who was small in build and a couple inches taller than her, having a relatively light complexion with a smooth face, without much or anything in the way of a beard. She also described his clothing, noting that he was wearing a black or dark blue toboggan, a portion of which came down over the ears and under the chin.

Boykins fits the physical description. Although Boykins has a mustache, and Ms. Curry did not describe the robber as having this physical characteristic, we do not believe that this consideration alone serves to weaken in substantial degree the accuracy of her description. Mrs. Rose, who did not give a description of the perpetrator immediately, also described him as being a young, light-skinned black male who was short in stature and small in build.

4. The witnesses' level of certainty. Both witnesses selected Boykins' picture from a photographic array, but neither was positive that he was the man. Curry, the cashier, picked Boykins out of the lineup, but again said she was not positive. About two weeks later, however, she advised the authorities that she had been positive about his identity as soon as she saw him in the first lineup. She explained that she had been reluctant to identify him initially because of concerns about getting involved, fear for her personal safety, and because she did not want a young man's life wasted, as she too had a son.

Mrs. Rose, after observing Boykins in the lineup, was still not positive he was the

man because she could not recall whether the robber had a mustache. She testified at trial that she was sure Boykins was the man except that he had a mustache which she did not remember.

5. The time between the crime and the confrontation. Ms. Curry's description of the perpetrator was given within minutes of the crime. The photographic array and lineups occurred only two days following the crime. This circumstance also points towards reliability.

Considering all the circumstances of this case, we do not find a very substantial likelihood of misidentification. The identification evidence is thus, as a matter of law, admissible; its reliability became an issue of fact for the jury. *State v. Payne*, 167 W.Va. 252, 280 S.E.2d 72, 79 (1981). What must always be kept in mind is that "a suggestive preindictment identification procedure does not in itself intrude upon a constitutionally protected interest." *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), n. 13. "[T]he constitutional error that the rule is intended to avoid is an unfair trial, rather than merely an unfair identification." *United States ex rel. Kirby v. Sturges*, 510 F.2d 397, 408 (7th Cir.1975); *State v. Stollings*, 158 W.Va. 585, 589, 212 S.E.2d 745, 748 (1975).

■ In the absence of a very substantial likelihood of misidentification, eyewitness testimony is for the jury to weigh. The *Manson* court stressed this point: "We are content to rely upon the good sense and judgment of American juries, for evidence with some element of untrustworthiness is customary grist for the jury mill. Juries are not so susceptible that they cannot measure intelligently the weight of identifi-

cation testimony that has some questionable feature." [2] 432 U.S. at 116, 97 S.Ct. at 2254, 53 L.Ed.2d at 155. *See also, Watkins v. Sowders*, 449 U.S. 341, 101 S.Ct. 654, 66 L.Ed.2d 549 (1981).

In this case, the defense offered and the trial court gave three instructions fully advising the jury about the identification evidence and the defense argued the identification point fully to the jury. Boykins' first instruction advised the jury that one of the most important issues in the case was the identification of Boykins as perpetrator of the crime, and that the State had the burden of proving identity beyond a reasonable doubt. The instruction goes on to advise the jury of the factors that they should consider in appraising the identification testimony of a witness, such as the witnesses' opportunity to observe the offender, including the length of time that was available, the distance from the witness to the offender, and the lighting conditions. The instruction also stated that if in their experience it is more difficult for members of one racial group to identify members of another racial group, then they should consider that in evaluating the witnesses' testimony. They were told to consider whether the identification made by the witness subsequent to the offense was the product of her own recollection, and that if the identification by the witness may have been influenced by the circumstances under which the defendant was presented for identification, they should scrutinize the identification with great care. They were told to consider the credibility of each eyewitness in the same way as any other witness, and that if after examining the identification testimony they had a reasonable doubt as to the accuracy

**2.** Footnote 14 of *Manson* states:

"In essence what the Stovall due process right protects is an evidentiary interest. ...

"It is part of our adversary system that we accept at trial much evidence that has strong elements of untrustworthiness—an obvious example being the testimony of witnesses with a bias. While identification testimony is significant evidence, such testimony is still only evidence, and, unlike the presence of counsel, is not a factor that goes to the very heart—the 'integrity'—of the adversary process.

"Counsel can both cross-examine the identification witnesses and argue in summation as to factors causing doubts as to the accuracy of the identification—including reference to both any suggestibility in the identification procedure and any countervailing testimony such as alibi." *Clemons v. United States*, 133 U.S.App.D.C. 27, 48, 408 F.2d 1230, 1251 (1968) (concurring opinion) (footnote omitted), *cert. denied*, 394 U.S. 964, 89 S.Ct. 1318, 22 L.Ed.2d 567 (1969).

of the identification, they must find the defendant not guilty.

The defendant's second instruction advised the jury that in determining the reliability of the in-court and out-of-court identifications of the defendant, they should consider the reliability factors identified in *Biggers*. By a third instruction the jury was advised that if they believed that the physical lineup of the defendant was unduly suggestive and that the eyewitnesses based their testimony about who robbed them on the suggestive lineup, then they should disregard that testimony in considering the defendant's guilt.

Another factor in the totality of the circumstances bearing on the reliability of the identification is that Boykins' alibi defense was essentially destroyed by the prosecution. Prior to the first trial, Boykins' alibi witness was a black woman who he had been living with at the time the offense was committed. She changed her story prior to trial after learning that Boykins had been seeing a white woman while still living with her. The white woman then came forward and testified that she and Boykins had been together at a nearby state park at the time the crime was committed. This change in alibi witnesses properly became the subject of vigorous cross-examination and severely weakened the alibi defense. On rebuttal, additional evidence was introduced by the prosecution, casting further doubt on the validity of the defense.

### IV.

Boykins also contends that his due process rights were violated by the failure of the State to produce photographs allegedly taken of the two lineups. Although there is some conflict in the testimony, the preponderance of the evidence indicates that photographs of the lineups were taken but that the film was lost or misplaced and was not in the State's possession at the time of trial.

█ We are troubled by the failure of the police officers involved to explain precisely what happened to the photographs. We have recognized a prosecutorial duty to

disclose exculpatory information whether requested or not. Syllabus point 4 of *State v. Hatfield*, 169 W.Va. 191, 286 S.E.2d 402 (1982), states our rule:

"A prosecution that withholds evidence which if made available would tend to exculpate an accused by creating a reasonable doubt as to his guilt violates due process of law under Article III, Section 14 of the West Virginia Constitution."

█ We have no doubt that the prosecution in this case would have had a constitutional duty to disclose the photographs, if they had been in its possession. However, in view of the testimony that the photographs were not in the government's possession at the time of trial, we cannot find that Boykins due process rights were violated.

### V.

█ Although we conclude that Boykins' was not denied due process by the pre-trial identification procedures employed by the police in this case, we reiterate our strong aversion to and disapproval of "any identification technique which, absent manifest necessity, is in the slightest degree suggestive ...." *State v. Stollings*, 158 W.Va. 585, 589, 212 S.E.2d 745, 748 (1975). The danger inherent in suggestive procedures is, of course, the significantly enhanced possibility that an innocent person will be mistakenly identified and convicted of a crime. In view of the potential for a miscarriage of justice, we urge law enforcement authorities to adopt procedures that show any resulting identification to be accurate and reliable. By following procedures to minimize suggestivity such as taking photographs of lineups, the police also can, as a practical matter, reduce, if not eliminate, potential due process challenges to lineup testimony.

### VI.

█ Boykins also contends that the trial court abused its discretion by permitting the prosecution to call a rebuttal witness who had not been listed in discovery answers and of which the defense had not

been given notice. Any error in admission of this testimony is clearly harmless in view of other properly admitted evidence more damaging to Boykins' alibi defense. We addressed a similar factual situation in *State v. Cox*, 171 W.Va. 50, 297 S.E.2d 825, 828 (1982), and also found any error to have been harmless.

We have carefully considered Boykins' remaining contentions and find no grounds for reversal.

The judgment of the Circuit Court of Logan County is therefore affirmed.

Affirmed.