355 S.E.2d 614

**STATE of West Virginia**

v.

**Willard O. BROWN**

No. 17237.

Supreme Court of Appeals of West Virginia.

March 11, 1987.

Carl L. Harris, Fayetteville, for appellant.

Charlie G. Brown, Atty. Gen., Mary Rich Maloy, Asst. Atty. Gen., Charleston, for appellee.

McGRAW, Chief Justice:

This appeal is brought by the appellant, Willard O. Brown, to challenge his conviction, in the Circuit Court of Fayette County, of the crimes of aggravated robbery and sexual abuse of the first degree. We find no reversible error, and we affirm the judgment of the lower court.

The facts of this case are essentially undisputed. The victim was the proprietress of a restaurant located off U.S. Route 19 south of U.S. Route 60 in Fayette County. In the early evening of January 29, 1985, she was alone in the restaurant, which was closed due to inclement weather,

when a man claiming to be a truck driver came to the door asking to buy diesel fuel. Through the locked door, she directed him to a nearby campground and store operated by Carol Sunderlin.

Fifteen or twenty minutes later, the same man returned to the restaurant asking to use the telephone. When the victim admitted the man to the building, he brandished a knife and demanded money. After she gave him ten one-dollar bills from her handbag, the man tied her hands, began to remove her clothing, pushed her to the floor and announced his intention to have sexual relations. He retreated, however, when the victim told him she was having her period. After examining her genital area with his hand, the man tied her ankles together and began searching the restaurant. In the victim's handbag he found a pouch which she later estimated to contain around $3700 in fifty- and one-hundred-dollar bills. The assailant took the money, threatened the victim again with the knife and left.

After making sure her attacker was gone, the victim freed herself and drove to Mrs. Sunderlin's store, where she reported that she had been robbed by a truck driver. Mrs. Sunderlin immediately telephoned the police and gave them a description of a suspicious man to whom she had refused to sell diesel fuel earlier that day. In addition, Mrs. Sunderlin gave the police a description of a tractor-trailer which she saw leaving the area and speeding north on U.S. Route 19 shortly before the victim reported the robbery to her. These descriptions were radioed to all law enforcement units in the area. A deputy sheriff was dispatched to the campground to interview the victim, who gave a description of her assailant consistent with the description given to the police over the telephone by Mrs. Sunderlin.

Shortly thereafter, a tractor-trailer driven by the appellant, a Pennsylvania resident, was stopped by Ansted city police as it was speeding west through the Fayette County town on U.S. Route 60. The truck and the appellant matched the descriptions reported on the radio by the Fayette Coun-

ty Sheriff's Department and were detained until deputies could be summoned. Upon arrival, one of the deputies conducted a pat-down of the appellant and found a knife on his person. The victim was driven to Ansted, where she identified the appellant as the man who attacked and robbed her. The appellant was placed under arrest and taken before a magistrate.

Deputies obtained a search warrant and returned to Ansted to search the truck. In the cab, the deputies found articles of clothing similar to those worn by the robber and the man in Mrs. Sunderlin's store. In addition, they found packets of money, most of which were still in bank wrappers. The deputies counted 18 one-hundred-dollar bills, 40 fifty-dollar bills and 10 one-dollar bills, or a total of $3810. These items were seized, and the truck was impounded.

Counsel was appointed to represent the appellant at the preliminary hearing conducted on February 5, 1985. On April 3, 1985, an indictment was returned charging the appellant with one count of aggravated robbery and one count of sexual assault of the first degree. After a series of hearings conducted pursuant to the appellant's various pretrial motions, trial before a jury began on July 12, 1985.

At trial the appellant did not contest that the crimes charged had occurred, but asserted that he was not the perpetrator. On July 15, 1985, the jury returned a verdict finding the appellant guilty of aggravated robbery and of sexual abuse of the first degree. By order dated July 19, 1985, the appellant's motion to set aside the verdict was denied, and he was sentenced to 60 years imprisonment for the robbery and not less than one nor more than five years imprisonment for sexual abuse, said sentences to run consecutively. It is from this order that the appellant prosecutes this appeal.

I

The appellant's principal assignment of error is that the trial court erred in allowing the State to introduce into evidence the in-court and out-of-court identifications of the appellant by the victim and the in-court

identification of him by Mrs. Sunderlin. Prior to trial the appellant moved to suppress this evidence on the ground that in both cases the out-of-court identification procedures were unduly suggestive and tainted the in-court identifications made by these witnesses.

The evidence adduced at the pretrial suppression hearings showed that the victim was driven to Ansted within 45 minutes of the time the robbery occurred. When she arrived, a deputy handed her a Pennsylvania driver's license containing a photograph of the appellant, whom she identified as her assailant. The appellant was then brought in front of the police cruiser in which the victim was seated and illuminated by the vehicle's headlights. From the backseat of the cruiser, the victim identified him as the man who assaulted and robbed her. The appellant was the only man in the area who was not dressed in a police uniform.

In addition, the police conducted a photo array for Mrs. Sunderlin sometime after the appellant was arrested. Mrs. Sunderlin identified the appellant's photograph as the one of the man who had been in her store earlier on the day of the robbery. However, the other photographs in the array were of persons dissimilar in appearance to the appellant.

The trial court ruled that the photo array presented to Mrs. Sunderlin was unduly suggestive and granted the appellant's motion to suppress her out-of-court identification. The court concluded, however, that the victim's out-of-court identification, though obtained by the use of suggestive procedures, was nonetheless reliable in view of the fact that her identification was immediate and unhesitating and occurred shortly after the crimes took place. In addition, the court noted that both witnesses had had an excellent opportunity to view the suspect[1] and had given the police concise descriptions of him consistent with the appellant's appearance prior to the sugges-

tive out-of-court identifications. Accordingly, the court ruled that the victim's out-of-court identification was admissible and that both women were reliable witnesses to identify the appellant at trial.

■ There is no question that the out-of-court identifications of both the victim and Mrs. Sunderlin were obtained by the use of suggestive confrontation procedures. *See, e.g., State v. Stollings,* 158 W.Va. 585, 212 S.E.2d 745 (1975). However, "suggestive procedures *alone* should not be the basis of excluding an otherwise totally reliable identification ..." *State v. Boyd,* 167 W.Va. 385, 396, 280 S.E.2d 669, 679 (1981), *quoting State v. Kennedy,* 162 W.Va. 244, 248, 249 S.E.2d 188, 190 (1978).

"In determining whether an out-of-court identification of a defendant is so tainted as to require suppression of an in-court identification a court must look to the totality of the circumstances and determine whether the identification was reliable, even though the confrontation procedure was suggestive, with due regard given to such factors as the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Syl. pt. 3, *State v. Casdorph,* [159 W.Va. 909], 230 S.E.2d 476 (1976).

Syllabus point 2, *State v. Gravely,* 171 W.Va. 428, 299 S.E.2d 375 (1982). The same criteria apply to determine whether evidence of an out-of-court identification should be excluded. *State v. Boyd, supra; State v. Kennedy, supra.*

■ In the case at bar, it is evident that the circuit court considered the factors enumerated above in determining that the reliability of the victim's out-of-court identification of the appellant outweighed the corrupting effect of the suggestive confronta-

1. The victim spent approximately 25 minutes in the restaurant with her assailant and observed him carefully. Mrs. Sunderlin observed the man in her store earlier in the day for about 10 minutes and paid particular attention to his appearance because of his suspicious behavior when attempting to cash a check.

tion. Similarly, it appears from the record that both witnesses were able to make in-court identifications of the appellant based upon observations independent of the suggestive out-of-court identification procedures. In the absence of a very substantial likelihood of misidentification, the evidence was admissible, and its reliability became a matter for the jury. *State v. Payne*, 167 W.Va. 252, 280 S.E.2d 72 (1981). *See also State v. Boykins*, 173 W.Va. 761, 320 S.E.2d 134 (1984); *State v. Kennedy, supra*. Accordingly, we find no reversible error in the trial court's refusal to suppress the in-court identification of Mrs. Sunderlin and the in-court and out-of-court identifications by the victim.

## II

The appellant also contends that the trial court erred in denying his motion to represent himself at trial. The appellant's *pro se* motion to dismiss his court-appointed counsel was filed on May 20, 1985, and a hearing thereon was conducted the following day. The gist of the appellant's motion was that he did not believe he could get a fair trial or proper representation in Fayette County. In response to questioning by the court, the appellant admitted that he had no prior training in the law or experience representing himself in a felony prosecution, but asserted that he wished to proceed without counsel because: "If I'm going to get railroaded in this State, I might as well do it myself." After advising the appellant that he was charged with two very serious offenses and that it was important for him to have the benefit of counsel, the court urged the appellant to reconsider and cooperate with his appointed attorney and denied the motion.

■ The appellant contends that the trial court's denial of his motion to appear *pro se* was reversible error under Syllabus point 8 of *State v. Sheppard*, 172 W.Va. 656, 310 S.E.2d 173 (1983), wherein we stated:

> A defendant in a criminal proceeding who is mentally competent and *sui juris*, has a constitutional right to appear and defend in person without the assistance of counsel, provided that (1) he voices his desire to represent himself in a timely and unequivocal manner; (2) he elects to do so with full knowledge and understanding of his rights and of the risks involved in self-representation; and (3) he exercises the right in a manner which does not disrupt or create undue delay at trial.

The threshold inquiry is whether the defendant has made a timely and unequivocal request. "To be entitled, as a matter of right, to represent himself without the assistance of counsel, the defendant must make a timely and unequivocal assertion of the right. The failure to make a timely and unequivocal demand places the decision within the discretion of the trial court. [Citations omitted]" 172 W.Va. at 670, 310 S.E.2d at 187.

In this case, there is no question that the appellant's request, tendered some two months prior to trial, was timely. There is a substantial issue, however, as to whether his demand was unequivocal. The appellant's motion was predicated, for the most part, upon his belief that he was unable to get a fair trial in Fayette County. The appellant's remarks to the trial judge do not indicate a genuine desire to waive his right to counsel, but rather, evince an attitude of resignation to his perceived fate. Once the trial court had ruled on the appellant's motion, the issue of self-representation was not raised again, and the appellant appears to have proceeded to trial cooperating fully with his appointed counsel.

■ In these circumstances, we do not think the appellant's request to represent himself without benefit of counsel can be characterized as "unequivocal." Accordingly, the decision to grant or deny the motion was within the discretion of the trial court. In view of the record before this Court, we find no abuse of discretion which would warrant reversal of the appellant's conviction on this ground.

## III

The appellant next contends that the trial court erred in refusing to strike for cause a number of prospective jurors. Two pro-

spective jurors were related by marriage to law enforcement officers. A third member of the panel was related to a deputy sheriff and was married to a former employee of the Fayette County Sheriff's Department. A fourth prospective juror was married to the presiding judge's secretary. A fifth juror was acquainted with the victim and her husband.

Counsel for the appellant was permitted to conduct an individual *voir dire* of these jurors. The first three potential jurors all stated that they did not believe their relationship to or acquaintance with law enforcement officers would affect their ability to weigh the evidence presented at trial impartially. The fourth prospective juror stated that his wife had not discussed the case with him and that he did not believe their relationship would bias him for or against the appellant. The fifth member of the panel stated that he had known the victim for 10 or 12 years, that he believed her to be truthful and that he was more likely to believe her testimony than that of a stranger. This juror also stated, however, that his acquaintance with the victim and her husband was the result of a business relationship rather than a social one and that he believed he was able to weigh the evidence impartially.

At the close of the individual *voir dire,* counsel for the appellant moved to strike these five jurors for cause. The trial court denied the motion. Defense counsel used his preemptory challenges to strike four of the challenged jurors from the panel. The other was allowed to sit on the jury.[2]

 We do not believe that any of these prospective jurors were automatically disqualified from sitting on the jury solely by virtue of their respective relationships to or acquaintance with law enforcement officers, court personnel or the victim. There was no showing that the law enforcement officers to which three of the prospective jurors were related or acquainted were in any way connected to the proceedings against the appellant. "A prospective juror's consanguineal, marital or social relationship with an employee of a law enforcement agency does not operate as a per se disqualification for cause in a criminal case unless the law enforcement official is actively involved in the prosecution of the case...." Syllabus point 6, in part, *State v. Beckett,* 172 W.Va. 817, 310 S.E.2d 883 (1983). Nor was there any showing that the presiding judge's secretary had any active involvement or knowledge of the case. Even if she had, the relationship of the juror to an employee of a judicial officer charged with impartial resolution of the case does not give rise to the same inference of bias or prejudice which arises from relationship or close acquaintance with law enforcement or prosecutorial officers charged with an adversarial function. *See State v. Maynard,* 170 W.Va. 40, 289 S.E.2d 714 (1982).

 " 'The true test as to whether a juror is qualified to serve on the panel is whether without bias or prejudice he can render a verdict solely on the evidence under the instructions of the court.' Syl. pt. 1, *State v. Wilson,* 157 W.Va. 1036, 207 S.E.2d 174 (1974)." Syllabus point 4, *State v. Wade,* 174 W.Va. 381, 327 S.E.2d 142 (1985). "Jurors who on *voir dire* of the panel indicate possible prejudice should be excused, or should be questioned individually either by the court or by counsel to precisely determine whether they entertain bias or prejudice for or against either party, requiring their excuse." Syllabus point 3, *State v. Pratt,* 161 W.Va. 530, 244 S.E.2d 227 (1978).

The appellant here was afforded an opportunity to conduct an individual examination of those potential jurors who indicated a relationship or acquaintance which might give rise to prejudice or bias against the appellant. All of the jurors indicated by their responses to counsel's questioning that they believed themselves capable of weighing the evidence objectively. The determination of whether those prospective jurors were, in fact, biased or prejudiced was a matter within the sound discretion of the trial judge. *See West Virginia Department of Highways v. Fisher,* 170

---

2. The juror was related by marriage to an Indiana state policeman.

W.Va. 7, 289 S.E.2d 213 (1982); *State v. Pietranton*, 140 W.Va. 444, 84 S.E.2d 774 (1954); *Ritz v. Kingdon*, 139 W.Va. 189, 79 S.E.2d 123 (1953); *State v. Gargiliana*, 138 W.Va. 376, 76 S.E.2d 265 (1953). While it might have been better for the trial judge to excuse certain of the challenged jurors for cause, in view of the circumstances of this case, we cannot say that his failure to do so constituted an abuse of discretion.

### IV

The appellant's next assignment of error concerns the trial court's rulings on the admissibility of evidence seized by the police from the cab of the tractor-trailer the appellant was driving on the day of the robbery. The appellant first contends that this evidence should have been excluded because he was not given a copy of the search warrant, although he was present when it was issued, or of the receipt for the property seized on the day of the search.

■ This contention is plainly without merit. The evidence showed that the vehicle in question was not owned by the appellant, but, rather, was leased by him. A copy of the search warrant and the property receipt was left in the cab of the truck by the officers who conducted the search in accordance with Rule 41(d) of the West Virginia Rules of Criminal Procedure.[3] Since the appellant was provided with a copy of the warrant and of the property receipt well before trial, we find no error in the trial court's refusal to suppress this evidence on this ground. *See United States v. Dauphinee*, 538 F.2d 1 (1st Cir. 1976); *United States v. Klapholz*, 17 F.R.D. 18 (S.D.N.Y.1955), *aff'd* 230 F.2d

494 (2d Cir.), *cert. denied*, 351 U.S. 924, 76 S.Ct. 781, 100 L.Ed. 1454 (1956).

The appellant also asserts that the trial court erred in allowing the State to introduce photographs of the money and bank wrapper seized from the truck and the testimony of a deputy as to the contents thereof. The photographs were introduced because the money had been returned to the victim several days after the robbery so that she could reopen her business. The bank wrappers were inadvertently returned at the same time and was not available for introduction at trial. The deputy who took the photographs of these items was allowed to testify that the name of an Ansted bank appeared on the money wrapper and was visible in the photograph if viewed under a magnifying glass.

■ The appellant's contention that the photographs were inadmissible in the absence of the items themselves is clearly without merit. Rule 1003 of the West Virginia Rules of Evidence permits the contents of writings or recordings to be proved by admission of a duplicate of the original "to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original."[4] No challenge to the authenticity of the items seized was raised at trial. As to the fairness of admitting the photographs in lieu of the items themselves, that was a matter within the discretion of the trial court. " 'The action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion.' Syllabus Point 10, *State v. Huffman*, 141

---

3. W.Va.R.Crim.P., Rule 41(d) provides, in pertinent part:

 Execution and Return with Inventory.—The officer taking property under the warrant shall give to the person from whom or from whose premises the property was taken a copy of the warrant and a receipt for the property taken *or shall leave the copy and receipt at the place from which the property was taken.* (Emphasis added)

4. W.V.R.E., Rule 1001(1) defines "writings and recordings" as "letters, words, or numbers, or

their equivalent, set down by handwriting, typewriting, printing, photostating, photographing, magnetic impulse, mechanical or electronic recording, or other form of data compilation."

 W.V.R.E., Rule 1001(4) defines "duplicate" as "a counterpart produced by the same impression as the original, or from the same matrix, or by means of photography, including enlargements and miniatures, or by mechanical or electronic recording or by chemical reproduction, or by other equivalent techniques, which accurately reproduces the original."

W.Va. 55, 87 S.E.2d 541 (1955)." Syllabus point 4, *State v. Ashcraft*, 172 W.Va. 640, 309 S.E.2d 600 (1983).

 Neither did the rules render the testimony of the deputy inadmissible. The best evidence rule does not preclude a witness from testifying to the facts recorded in a writing from his personal knowledge. *See* Cleckley, *Handbook on Evidence for West Virginia Lawyers* 582 (2d ed. 1986). Accordingly, we find no reversible error in the trial court's refusal to exclude this evidence.

### V

The appellant also assigns as error the trial judge's refusal to recuse himself from hearing the case. The appellant filed two motions to disqualify the trial judge on the ground of prejudice as reflected by the trial court's adverse rulings on the appellant's pretrial motions to suppress evidence and his motion for bond. In addition, in the second motion for disqualification, a *pro se* motion filed by the appellant just two weeks before trial, the appellant alleged prejudice on the part of the trial judge as the result of a civil action filed by the appellant against the judge in the United States District Court and collusion between the judge and defense counsel. In both instances, the trial judge refused to recuse himself and submitted the motion to the Chief Justice of this Court as required by Trial Court Rule XVII(1)(a) and (b). In both instances, the Chief Justice ruled that the motion was insufficient as a matter of law to warrant recusal of the trial judge.

 The rule with respect to recusal of a trial judge was restated in Syllabus point 3 of *State v. Hodges*, 172 W.Va. 322, 305 S.E.2d 278 (1983):

"Where a challenge to a judge's impartiality is made for substantial reasons which indicate that the circumstances offer a possible temptation as to the average man as a judge not to hold the balance nice, clear and true between the State and the accused, a judge should recuse himself." Syl. pt. 14, *Louk v. Haynes*, [159 W.Va. 482], 223 S.E.2d 780 (1976) (in part).

There was no showing in this case of any "substantial reasons" to question the trial judge's impartiality. The trial court's rulings on the appellant's pretrial motions had a reasonable basis in law. There was no evidence to support the allegation of collusion or any showing of bias resulting from the mere fact of the judge being named a defendant in the appellant's federal court civil action. Finding no substantial reasons tending to impair the trial judge's impartiality, we affirm his decision not to recuse himself.

### VI

██ Finally, the appellant raises a number of alleged errors which can be disposed of briefly. The appellant contends that the trial court erred in refusing his motion for judgement of acquittal at the close of the State's case on the ground that the evidence failed to show penetration, a material element of the offense of sexual assault of the first degree,[5] the crime charged in the indictment. The appellant was convicted, however, of the crime of sexual abuse in the first degree, an offense which does not require proof of penetration.[6] Accordingly, any error in the trial court's denial of the appellant's motion for judgment of acquittal on this ground was harmless and not prejudicial to the appellant. *See State v.*

---

**5.** W.Va.Code § 61–8B–3 (1984 Replacement Vol.) provides that "sexual intercourse or sexual intrusion" is an essential element of the crime of sexual abuse of the first degree. W.Va.Code §§ 61–8B–1(7) and 61–8B–1(8) define both "sexual intercourse" and "sexual intrusion" in terms of "an act ... involving penetration, however slight, of the female sex organ...."

**6.** W.Va.Code § 61–8B–7 (1984 Replacement Vol.) provides, in pertinent part:

"(a) A person is guilty of sexual abuse in the first degree when:
(1) Such person subjects another person to sexual contact without their consent, and the lack of consent results from forcible compulsion...."
"Sexual contact" is defined as "any intentional touching, either directly or through the clothing of the anus or any part of the sex organs of another person,...." W.Va.Code § 61–8B–1 (1986 Cum.Supp.).

*Butcher,* 165 W.Va. 522, 270 S.E.2d 156 (1980); *State v. Kirtley,* 162 W.Va. 249, 252 S.E.2d 374 (1978); *State v. Mason,* 162 W.Va. 297, 249 S.E.2d 793 (1978); *State v. McMillion,* 104 W.Va. 1, 138 S.E. 732 (1927).

The appellant also assigns as error the trial court's refusal to give a number of requested defense instructions. One of these proposed instructions, relating to the elements of the offense of sexual abuse of the first degree, was withdrawn by the appellant's counsel in favor of a joint instruction approved by both the State and the defense. Any error with regard to the withdrawn instruction must be deemed to have been waived. The record shows that the matters contained in the remainder of the proposed defense instructions were addressed by the court's charge to the jury or by other instructions offered by the parties and approved by the court. " 'It is not reversible error to refuse to give instructions offered by a party that are adequately covered by other instructions given by the court.' Syllabus Point 20, *State v. Hamric,* 151 W.Va. 1, 151 S.E.2d 252 (1966)." Syllabus point 5, *State v. Ashcraft, supra.* Accordingly, we find no reversible error in the trial court's refusal to give these instructions.

The appellant also argues that the sentence of 60 years' imprisonment upon his conviction of aggravated robbery was disproportionate to the crime. The appellant cites no mitigating factors, however, which would warrant our interference with the trial court's sentence. The crime was a violent one and involved the use of the weapon. The appellant, who was over fifty years old at the time of trial, was shown to have a long record of prior felony arrests and convictions in Pennsylvania, a fact which the court took into consideration in imposing sentence. The appellant expressed no remorse for the crimes which had been committed or sympathy for the victim, and expressly waived a pre-sentence investigation. No motion for reconsideration of sentence was filed. In short, the appellant failed to carry his burden of producing a record to support his challenge to the proportionality of the sentence. *See Smoot v. McKenzie,* 166 W.Va. 790, 277 S.E.2d 624 (1981). Accordingly, we find no justification for interfering with the sound discretion of the trial court in imposing the penalty. *See State v. Buck,* 173 W.Va. 243, 314 S.E.2d 406 (1984); *State v. Cooper,* 172 W.Va. 266, 304 S.E.2d 851 (1983); *State v. Houston,* 166 W.Va. 202, 273 S.E.2d 375 (1980).

The appellant's final assignment of error is that the trial court erred in refusing to grant a new trial based on allegations of possible juror misconduct. At the post-trial hearing, the appellant asserted that during the trial, he observed jurors mingling in a hallway near prosecution witnesses who were discussing the case. The appellant also asserted that noise from the air conditioning units prevented him, and possibly the jurors, from hearing all of the testimony. No objection to these matters was tendered at trial, and the trial court refused to grant the motion for a new trial on this ground.

We find no error in the trial court's ruling. During trial, the court advised the jurors on a number of occasions to speak up if the noise from the air conditioning interfered with their ability to hear the testimony and repeatedly admonished the jury not to discuss the case. No evidence was presented to show that any of the the jurors actually overheard any improper conversation of the prosecution witnesses or were unable to hear any of the testimony. In the absence of such a showing, we find no error in trial court's denial of the motion for a new trial on these grounds raised for the first time after the verdict. *See State v. Williams,* 172 W.Va. 295, 305 S.E.2d 251 (1983).

In summary, we find no error in the proceedings against the appellant which would warrant reversal of his conviction or sentence. Accordingly, the judgment of the Circuit Court of Fayette County is affirmed.

Affirmed.