613 S.E.2d 904

**Samuel J. SWIGER, and Brenda Frazier Swiger, Individually, and as Next Friend of Joseph Shawn Swiger, an Infant, and all Individuals as Representatives of a Class of other Similarly Situated Individuals, Plaintiffs Below, Appellees,**

v.

**UGI/AMERIGAS, INC., a Foreign Corporation, DBA Amerigas, Inc., and James Walters, an Individual, Defendants Below, Appellants.**

No. 31792.

Supreme Court of Appeals of
West Virginia.

Submitted March 22, 2005.

Decided May 11, 2005.

Michael J. Romano, Romano & Miley, David J. Romano, Christine Jones Pacyna, Romano Law Office, Clarksburg, for the Appellees.

Billy Atkins, Atkins & O'Black, PLLC, Morgantown, Jay N. Varon, Melinda F. Levitt, Akita N. Adkins (Pro Hac Vice), Foley & Lardner, LLP, Washington, D.C., for the Appellants.

Ancil G. Ramey, Steptoe & Johnson, PLLC, Charleston, for Amicus Curiae, NiSource, Inc. and West Virginia Propane Gas Association.

Darrell V. McGraw, Jr., Attorney General, Silas B. Taylor, Senior Deputy Attorney General, Charleston, Amicus Curiae.

Paul T. Farrell, Jr., Wilson, Frame, Benninger & Metheney, PLLC, Morgantown, for Amicus Curiae, West Virginia Trial Lawyers Association.

ALBRIGHT, Chief Justice.

This case is before us on certified questions from the Circuit Court of Monongalia County and presents issues concerning application of certain regulatory provisions of the state fire code to a commercial vendor. At the center of this case is both the validity of a legislative rule which exempts one- and two-family dwellings from compliance with the provisions of the state fire code [1] and the case-specific issue of whether this exemption can be invoked by a commercial vendor such as Appellant AmeriGas Propane, Inc. ("AmeriGas"). When presented with these issues, the Circuit Court of Monongalia County held that the exemption at issue was both contrary to the intent and purpose of the enabling legislation set forth in the West Virginia State Fire Prevention and Control Act (the "Act") [2] and inapplicable based on the facts of this case. Upon our determination that the exemption for one- and two-family dwellings was validly promulgated and enacted into law, we find no basis for the lower court's determination that the exemption cannot be asserted by a commercial entity such as AmeriGas who performs work on the situs where a one- and two-family dwelling is located. Accordingly, we determine that the regulatory exemption from compliance with the state fire code provided for one- and two-family dwellings is applicable to commercial suppliers of liquid propane gas in connection with their installation of gas lines to one- and two-family dwellings.

## I. Factual and Procedural Background

The plaintiffs in the underlying action, Samuel J. Swiger and Brenda Frazier Swiger, filed a cause of action against AmeriGas [3] on July 10, 1998, in connection with an explosion that occurred on their property.[4] The

---

1. See W.Va.R. Fire Commission 87 § 1–1.5.

2. See W.Va.Code § 29–3–5 (1988) (Repl.Vol. 2004).

3. The primary service technician for AmeriGas in the Morgantown, West Virginia, area—James Walters—was also named as a defendant.

4. The Swigers sought recovery for personal injuries, property damage, and breach of contract.

Swigers alleged that the explosion resulted due to the improper depth at which Amerigas buried their propane gas line.[5] The explosion destroyed the Swiger home and burned both Mr. Swiger and his son, Joseph Shawn. By order entered on October 21, 1999, the circuit court certified this matter as a class action after the Swigers moved to expand their cause of action to include "all other similarly situated individuals." [6] While the Swigers have settled their claims arising from the explosion,[7] the claims asserted by the Appellee class members are still pending.

In the summer of 2001, Amerigas undertook to voluntarily inspect and/or rebury the gas lines of its West Virginia customers.[8] When a dispute arose as to which standard [9] was controlling with regard to the required burial depth for the subject gas lines,[10] the Swigers sought a declaration from the trial court that a flat eighteen inch burial depth

was the appropriate standard to be applied.[11] Following a hearing on this issue, the circuit court issued an order on June 19, 2002, in which it ruled that the standards included as a part of the state fire codes,[12] rather than those included in the building codes,[13] were the governing standards as to the depth at which LP pipeline was required to be buried.

AmeriGas asked the circuit court to reconsider [14] its ruling in light of the exemption set forth by legislative rule and commonly referred to as § 1.5, which expressly provides that: "The State Fire Code has no application to ... buildings used wholly as dwelling houses for no more than two families." [15] After hearing argument on this issue, the trial court orally denied AmeriGas' motion for reconsideration. In its order issued on September 25, 2003, the lower court found that the subject exemption "is contrary to the express intent and clear man-

5. While putting in a landscaping border, Mr. Swiger struck the line, which had been installed by Amerigas at a depth of less than six inches.

6. The certification order permits the class to be comprised of "all persons residing in West Virginia who have had LP gas lines installed on their property by AmeriGas in violation of the standards set forth in the National Fuel Gas Code."

7. The circuit court approved the settlement by order entered on May 29, 2003.

8. In conducting any requested reburials, Amerigas relied on its interpretation of NFPA 58, known as the Liquefied Petroleum Gas Code, for the required burial depth. That standard provided that underground LP gas lines shall be buried a minimum of 18 inches, but that "[t]he cover shall be permitted to be reduced to 12 in. (300 mm.) if external damage to the pipe or tubing is not likely to result" and required that the piping be encapsulated in a conduit or bridge (shield) if a minimum of 12 inch cover could not be maintained. Based on its interpretation of NFPA 58, Amerigas, where requested by the customer, was burying the gas lines at a depth of 12 inches.

9. The dispute involved whether building code requirements were applicable or whether the NFPA standards controlled. See infra n. 13.

10. Initially, the parties proceeded from the position that the applicable standard was set forth by the National Fire Protection Association ("NFPA") in a series of pamphlets, specifically NFPA 54, also referred to as the National Fire Gas Code.

11. The Swigers relied upon NFPA 58 to support their position despite the fact that this pamphlet permits a 12 inch burial depth if there is no likelihood of external damage. The most recent version of that pamphlet (effective February 5, 2004) provides: "Buried metallic pipe and tubing shall be installed underground with a minimum of 12 in. (300 mm.) cover. The minimum cover shall be increased to 18 in. (460 mm.) if external damage to the pipe or tubing from external force is likely to result. If a minimum 12 in. (300 mm.) of cover cannot be maintained, the piping shall be installed in conduit or shall be bridged (shielded)."

12. Those standards are set forth in the National Fire Protection Association ("NFPA") pamphlets. See supra nn. 10, 11.

13. The State Building Codes, first adopted in 1989, incorporate different standards, such as those published by the Building Officials & Code Administration International ("BOCA") and the Council of American Building Officials ("CABO"). See W.Va.R. Fire Commission 87 § 4–1 et seq. By statute, the building codes are only applicable in those counties and municipalities that choose to adopt such provisions. See W.Va.Code § 29–3–5b(a) (2001) (Repl.Vol.2004). According to the parties, three counties and forty-nine municipalities have adopted the building codes.

14. While Amerigas initially sought the trial court's reconsideration through a letter, Appellant formally filed a motion for reconsideration on November 11, 2002.

15. W.Va.R. Fire Commission 87 § 1–1.5.

date of the West Virginia State Fire Prevention and Control Act" and that it "was never intended to apply to ... a sophisticated commercial business entity" such as Amerigas. AmeriGas requested that the trial court seek clarification from this Court regarding its determination that the exemption was not available to Amerigas due to its status as a commercial vendor.

By order entered on March 3, 2004, the trial court certified the following questions to this Court:

1.  Does 87 C.S.R. 1, § 1.5, which exempts application of the Fire Code's provisions to buildings used wholly as dwelling homes for no more than two families, violate the intent and purpose of the West Virginia State Fire Code, and the public policy of this State?

2.  Was 87 C.S.R. 1, § 1.5 intended to be applicable to commercial suppliers of liquid propane gas, such as Defendant AmeriGas, when such commercial vendors install or supply liquid propane gas to one- and two-family dwellings in this State?

3.  Even if the express exemption in Section 1.5 is found to be invalid against third-party service providers, is it proper to impose on a retrospective basis negligence *per se* liability against such service providers for violations of the State Fire Code with respect to one and two family dwellings?

This Court, by order entered on June 29, 2004, accepted the certified questions and docketed the matter for resolution.

## II.  Standard of Review

Given that the issues presented clearly require this Court to decide matters involving statutory application and interpretation, our review is *de novo*. *See* Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995) (holding that "[w]here the issue ... is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review"). We

proceed to answer the questions certified to us from the circuit court.

## III.  Discussion

### A.  Validity of Exemption

■ We address the contention raised by Appellees that the exemption is invalid due to the manner of its initial enactment. When § 1.5 was first adopted in 1979, the legislative rule was passed by means of inclusion in an omnibus bill. Appellees suggest that the consequent violation of the one object rule of article VI, section 30 of the West Virginia Constitution [16] requires application of the special or careful scrutiny test to determine the exemption's validity [17] pursuant to this Court's rulings in *Chico Dairy Co. v. West Virginia Human Rights Commission*, 181 W.Va. 238, 382 S.E.2d 75 (1989) and *Kincaid v. Mangum*, 189 W.Va. 404, 432 S.E.2d 74 (1993).

■ In *Chico Dairy*, this Court denounced the practice of enacting legislative rules without complying with the procedures of the State Administrative Procedures Act ("APA"). *See* W.Va.Code §§ 29A–3–1 to –18 (1982) (Repl.Vol.2002). Because the legislative rule under examination in *Chico Dairy* had not been submitted to, reviewed by, and approved by the legislative rule-making committee and the Legislature, as required by the APA, the Court found the rule to be invalid. 181 W.Va. at 245, 382 S.E.2d at 82. When this Court next visited the issue of legislative rule-making in *Kincaid*, we addressed the concern of logrolling numerous legislative rules together in one bill and held that:

If there is a reasonable basis for the grouping of various matters in a legislative bill, and if the grouping will not lead to logrolling or other deceiving tactics, then the one-object rule in *W.Va. Const.* art. VI, § 30 is not violated; however, the use of an omnibus bill to authorize legislative rules violates the one-object rule found in *W.Va. Const.* art. VI, § 30 because the use

---

16.  This constitutional provision requires in pertinent part: "No act hereafter passed, shall embrace more than one object, and that shall be expressed in the title." W.Va. Const. art. VI, § 30.

17.  *See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

of the omnibus bill to authorize legislative rules can lead to logrolling or other deceiving tactics.

189 W.Va. at 405, 432 S.E.2d at 75, syl. pt. 2.

Based on the articulated reason that "chaos would result if we h[e]ld that all of the legislative rules are void since the omnibus bills authorizing the rules violate the one-object rule of our constitution," we limited the ruling announced in syllabus point two of *Kincaid* to prospective application only. *Id.* at 412, 416, 432 S.E.2d at 82, 86. Later, upon reevaluation of the effects of our ruling in *Kincaid,* we modified our rulings in that decision to hold that:

in future cases, unless specific procedural or substantive infirmities are brought to our attention, we will no longer presume invalid legislative rules adopted prior to *Kincaid* merely because they were enacted as part of omnibus legislation. What we suggested in *Appalachian Power Co.,* 195 W.Va. at 585, 466 S.E.2d at 436, we now hold:

"[o]nce a disputed regulation is legislatively approved, it has the force of a statute itself .... Being an act of the West Virginia Legislature, it is entitled to more than mere deference; it is entitled to controlling weight. As authorized by legislation, a legislative rule should be ignored only if the agency has exceeded its constitutional or statutory authority or is arbitrary or capricious."

*West Virginia Health Care Cost Rev. Auth. v. Boone Meml. Hosp.,* 196 W.Va. 326, 335–36, 472 S.E.2d 411, 420–21 (1996).

In explanation of our ruling in *Boone Memorial,* we stated:

While we recognize interpretative analysis of omnibus legislation is to be conducted with great caution, unless specific procedural or substantive infirmities are proven, the case-by-case "careful scrutiny" standard cannot justify the expense of judicial resources required for its implementation.... If the language of an enactment is clear and within the constitutional authority of the law-making body which passed it, courts must read the relevant law according to its unvarnished meaning, without any judicial embroidery. Even where there is conflict between the legislative rule and the initial statute, that conflict will be resolved using ordinary canons of interpretation.

*Id.* at 336, 472 S.E.2d at 421.

In response to Appellees' contention that the exemption is invalid based on its manner of enactment, Amerigas remonstrates with the fact that while the subject legislation was initially included in an omnibus bill, it has been reenacted at least three times since this Court's rulings in *Kincaid.*[18] Amerigas maintains that even if the initial manner of passage was constitutionally deficient, the subsequent reenactments of legislation including the subject exemption, which post-dated *Kincaid* and were in accord with the dictates of that ruling, have eliminated the procedural infirmities raised by Appellees. We agree.

Beginning in 1994, the Legislature, in response to this Court's mandate in *Kincaid,* began combining various bills authorizing the promulgation of legislative rules based on subject matter. This change resulted in the submission of all legislative rule amendments for consideration in groupings suggested by the identity of the state agency or department charged with administerial responsibility for the matters to which the rules pertained. In terms of the Fire Commission and changes made to the state fire code from 1994 forward, all amendments and reenactments were adopted as part of specific legislation pertaining solely to matters involving Military Affairs and Public Safety,[19] as this agency is charged with administering the state fire commission, or to the Fire Commission, Protective Services, and Police.[20] In the event there is any lingering confusion over the rulings of this Court which address legislative rule-making, we hold that the in-

---

**18.** *See infra* nn. 19, 20.

**19.** *See, e.g.,* S.B. 88, 72nd Leg., 1st Reg. Sess. (1995); H.B. 4200, 73rd Leg., 2nd Reg. Sess. (1998).

**20.** *See* S.B. 339, 75th Leg., 1st Reg. Sess. (2002).

clusion in a bill which authorizes the promulgation of legislative rules pertaining to multiple agencies within one executive department does not violate the one object rule of article VI, section 30 of the West Virginia Constitution nor does it violate the holdings of this Court in *Kincaid.*

Given the manner in which § 1.5 was properly reenacted post-*Kincaid,* we find Appellees' arguments that the exemption is invalid based on its earlier adoption as part of an omnibus bill and that special scrutiny is required due to its manner of enactment both to be without merit. Simply put, § 1.5 is a valid legislative rule that was enacted in compliance with both statutory [21] and case law requirements.

### B. Conflict with Enabling Legislation

■ Appellees argue that § 1.5 is in conflict with the enabling legislation found in West Virginia Code § 29–3–5. As support for this contention, Appellees cite language in the enabling statute that charges the state fire commission with the responsibility of "promulgat[ing] comprehensive regulations for the safeguarding of life and property from the hazards of fire and explosion." W.Va.Code § 29–3–5(b). Looking additionally to the legislative finding that "[a] significant part of the population of this state needs improved fire prevention and control," Appellees contend that the exemption abrogates the Act's objective of safeguarding lives and property from fire and explosion hazards. W.Va.Code § 29–3–2(a).

In making these arguments, Appellees seek to have this Court make a determination that the exemption is unenforceable because it is contrary to the intent and purpose of the enabling legislation. *See Boone Meml.,* 196 W.Va. at 335, 472 S.E.2d at 420 (observing that courts are required to "reject administrative orders and rules that are contrary to legislative intent"). To support their position, Appellees argue that the absence of any language within the provisions of the Act expressly exempting the entirety of the Act's provisions from one- and two-family dwellings is significant. Their argument is essentially that the Legislature, had it intended to except certain types of residential structures from compliance with the Act's provisions, could have included a provision to accomplish these objectives. Appellees cite to specific statutory provisions where one- and two-family dwellings are expressly excused from compliance with the Act as evidence that the Legislature intended that non-compliance was intended to apply only in limited and specifically defined instances.[22] Invoking principles of common sense, Appellees further contend that the Act cannot achieve its desired objectives of promoting fire and explosion safety for the citizenry of this state if the exemption is upheld.

■ In discussing issues concerning administrative rules and regulations in *Appalachian Power Co. v. State Tax Department,* 195 W.Va. 573, 466 S.E.2d 424 (1995), we held in syllabus point four:

> If legislative intent is not clear, a reviewing court may not simply impose its own construction of the statute in reviewing a legislative rule. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute. *A valid legislative rule is entitled to substantial deference by the reviewing court. As a properly promulgated legislative rule, the rule can be ignored only if the agency has exceeded its constitutional or statuto-*

---

**21.** In response to *Kincaid,* the Legislature amended W.Va.Code 29A–3–12 to provide, in pertinent part, that:

> In acting upon the separate bills authorizing the promulgation of rules, the Legislature may, by amendment or substitution, combine the separate bills of authorization insofar as the various rules authorized therein are proposed by agencies which are placed under the administration of one of the single separate executive departments ... or the Legislature may combine the separate bills of authorization by

agency or agencies within an executive department.

W.Va.Code § 29A–3–12(a)

**22.** *See, e.g.,* W.Va.Code §§ 29–3–12(a)(4) (addressing Fire Marshall's enforcement of fire code provisions concerning exits); 29–3–12(d) (involving Fire Marshall's inspections of structures and facilities); 29–3–12(e) (concerning Fire Marshall's right of entry into buildings and premises).

*ry authority or is arbitrary or capricious.* W.Va.Code, 29A–4–2 (1982).

195 W.Va. at 579, 466 S.E.2d at 430 (emphasis supplied). Having concluded above that the exemption is a valid legislative enactment, the legislative rule under discussion can only be deemed unenforceable if the regulation was beyond the constitutional or statutory authority extended to the agency involved or if the rule is determined to be arbitrary or capricious. *See id.*

What Appellees overlook in advocating the invalidity of the exemption is the legal effect of a validly enacted legislative rule. In syllabus point five of *Smith v. West Virginia Human Rights Commission,* 216 W.Va. 2, 602 S.E.2d 445 (2004), we held that "[a] regulation that is proposed by an agency and approved by the Legislature is a "legislative rule" as defined by the State Administrative Procedures Act, *W.Va.Code,* 29A–1–2(d) [1982], and such a legislative rule has the force and effect of law." Moreover, it is not for this Court to second guess the legislative wisdom of adopting an exemption that limits the ambit of a specific enactment. As Justice Cleckley explained in *Boone Memorial,*

> Our job is not to weigh the wisdom of, nor to resolve any struggle between, competing views of the public interest, but rather to respect legitimate policy choices made by an agency in interpreting and applying a statute. Moreover, it is not necessary for us to find that the regulation is the only reasonable one or even that it is the result we would have reached had the question arisen in the first instance in this Court.

196 W.Va. at 339, 472 S.E.2d at 424.

This is not the first time that the validity of § 1.5 has been questioned. In *Redden v. Comer,* 200 W.Va. 209, 488 S.E.2d 484 (1997), arguments identical to those raised in this case were advanced by a litigant who brought a negligence cause of action based on the absence of smoke detectors in a single family dwelling in which a fire caused the death of his son. This Court affirmed the trial court's decision that the regulatory exemption from compliance with the state fire code provisions for one- and two-family dwellings was controlling and consequently dispositive of the father's right to bring a cause of action predicated on negligence arising from a statutory violation.[23] 200 W.Va. at 213, 488 S.E.2d at 488. Squarely addressing both the validity of the exemption and its effects, this Court opined in *Redden,* "[c]learly, the State Fire Commission was authorized, by statute, to create a State Fire Code. That Code, as adopted, contained a clear exemption regarding 'buildings used wholly as dwelling houses for no more than two families[.]' Under the circumstances of this action, that exemption is dispositive." 200 W.Va. at 213, 488 S.E.2d at 488.

In their attempt to distinguish *Redden,* Appellees contend that the decision cannot be viewed as dispositive because this Court did not directly address the issue of whether the exemption violated the purpose of the enabling statute.[24] In addition, Appellees call into question the weight that *Redden* should be accorded based on its issuance as a per curiam, rather than as a signed opinion. In *Walker v. Doe,* 210 W.Va. 490, 558 S.E.2d 290 (2001), we put to rest the much-debated and previously unresolved issue regarding the precedential value of per curiam decisions. *See id.* at 491, 558 S.E.2d at 291, syl. pt. 3, in part, (holding that "[p]er curiam decisions have precedential value as an application of settled principles of law to facts necessarily differing from those at issue in signed opinions"). Consequently, we wholly reject Appellees' suggestion that this Court's discussion in *Redden* of the exemption set forth in § 1.5 should be disregarded as mere dicta.

Without question, this Court's holding in *Redden* is controlling with respect to our

---

**23.** *See Reed v. Phillips,* 192 W.Va. 392, 452 S.E.2d 708 (1994) (holding that absence of smoke detector in one- or two-family dwellings in violation of statutory and regulatory requirements constitutes prima facie evidence of negligence on landlord's part provided injuries proximately flow from statutory non-compliance).

**24.** Appellees acknowledge that this issue was expressly raised by the Appellant in *Redden* through briefs submitted to the Court.

recognition that the exemption contained in § 1.5, when applicable and properly invoked, operates to prevent the provisions of the state fire code from applying to one- and two-family dwellings. The absence of the specific permutations raised in this case—the application of the exemption to a commercial vendor—does not vitiate the controlling effect of that decision with regard to this case. It merely requires further application of the principles announced in *Redden* to resolve the unique factual and legal issues presented here.

Before reaching the ultimate issue concerning the exemption's applicability to Amerigas, we must rule upon Appellees' premise that the exemption is unenforceable because it conflicts with the enabling legislation. As mentioned above, Appellees suggest that by carving out a significant segment of this state's citizenry through application of the exemption, the Legislature's objective of implementing a state fire code for the protection of this state's citizenry is thwarted. Rather than presenting a true conflict between a statutory provision and a regulation promulgated by an administrative agency, however, the issue framed by Appellees is in actuality a disagreement with the legislatively-approved decision to omit one class of structures from the state fire code's requirements. And, as Justice Cleckley expounded in *Boone Memorial,* the limited role of this Court does not permit us to engage in the kind of armchair legislating that Appellees wish us to undertake. *See* 196 W.Va. at 339, 472 S.E.2d at 424.

There are certainly valid reasons for exempting one- and two-family dwellings from the state fire code. Two such reasons that quickly come to mind are grounded in privacy and enforcement related concerns. Whatever the bases for the decision to exempt one- and two-family dwellings, it was within the drafting agency's prerogative to suggest that particular exemption and it was within the Legislature's authority to adopt that limitation on the reach of the state fire code each and every time this exemption was included

in a bill of authorization beginning with 1979 and up to the present time. The fact that Appellees think the Legislature was acting imprudently in limiting the scope of the state fire code is not the issue before this Court. Moreover, "[i]n the absence of ... [legislative] direction as to what elements are to be considered in promulgating ... [a] rule, the presumption is that ... [the Legislature] is entrusting the decision as to what to consider to the hands of the agency in deference to agency expertise." 195 W.Va. at 589, 466 S.E.2d at 440 (quoting *Kennedy v. Block,* 606 F.Supp. 1397, 1403 (W.D.Va.1985)).

■■■■■ Appellees have simply failed to convince this Court that the Legislature, in authorizing the creation of a state fire code, was not also giving the fire commission authority to define the parameters of what property would be subject to the code's provisions. As we explained in *Appalachian Power,* "[w]e will not set aside a formally adopted legislative rule without clearcut evidence of an inconsistency between the rule and the authorizing statute." 195 W.Va. at 588, 466 S.E.2d at 439. The mere fact that the objective underlying the state fire code was to promote fire protection for this state's citizens on its own does not suggest to this judicial body that there could be no limiting provisions with regard to the application of the fire code. And, as Justice Cleckley noted in *Boone Memorial,* "legislative acquiescence ... where the Legislature has revisited the language in ... authorizing ... [a rule's] promulgation as a legislative rule," weighs strongly in favor of the validity of a legislative rule.[25] 196 W.Va. at 340, 472 S.E.2d at 425. In this case, such "legislative acquiescence" has extended over the course of twenty-five years. Consequently, we respond to the first of the certified questions by holding that the legislative rule found in § 1.5 that expressly exempts one- and two-family dwellings from compliance with the state fire code does not violate the intent and purpose of the West Virginia State Fire Code or the public policy of this state.

**25.** As evidence of the Legislature's awareness of the exemption, Amerigas cites to the amendment of the Act in 1984 to add a provision, which took effect on July 1, 1999, requiring the installation

of smoke detectors in one- and two-family dwellings. *See* W.Va.Code § 29–3–16a (1984) (Repl. Vol.2004).

## C. Application of Exemption to Commercial Vendor

The trial court ruled below that "the one- and two-family dwelling exemption contained in the Fire Code regulations was never intended to apply to an entity such as Amerigas, a sophisticated commercial business entity which installs and delivers a hazardous substance such as propane." The trial court further opined that the Legislature intended that the subject exemption could only be asserted by the residents of a one- or two-family dwelling. We find no support for either of these conclusions.

By its terms, the exemption is written in terms of the dwelling and not with reference to a particular entity, such as the residents of the dwelling. Logic suggests that by defining the exemption in terms of the physical locale—the dwelling—the intention was to include both the structural dwelling and the property on which the dwelling is located. Contrary to the reasoning employed by the trial court and advanced by Appellees, there is nothing which suggests that the applicability of the exemption is dependent upon the nature of the entity performing work that comes under the protection of the state fire code. The exemption is simply not written in terms of hinging its application based upon the identity of the entity performing work on the property at issue. Consequently, if we were to hold that the exemption was not intended to apply to commercial vendors, such as Amerigas, we would be limiting the scope of the exemption with absolutely no legislative or regulatory reference point upon which to base such a conclusion. *See Dunlap v. Friedman's, Inc.*, 213 W.Va. 394, 398, 582 S.E.2d 841, 845 (2003) (stating that " '[i]t is not for [courts] arbitrarily to read into [a statute] that which it does not say[;] … we are obliged not to add to statutes something the Legislature purposely omitted' ") (citation omitted). Moreover, if we reached the same conclusion as the trial court and held that the exemption cannot be extended to one-and two-family dwellings where commercial vendors have performed services that fall within the aegis of the state fire commission, we would be engaging in outright policy making.

Amerigas points out the inherent limitations of defining the exemption in terms of the identity of the entity that performs covered services at one- and two-family dwellings. While the trial court sought to exclude sophisticated commercial vendors from the protections of the exemption, this only raises additional questions concerning who qualifies as a sophisticated commercial vendor. Because there is no proviso language which seeks to limit in any fashion the application of the exemption, we find no basis for concluding that invocation of the exemption is dependent upon the identity of the entity performing work on qualifying property. Accordingly, we respond to the second certified question by holding that the legislative rule found in § 1.5 is applicable to commercial suppliers of liquid propane gas when such commercial vendors install or supply liquid propane gas to one- and two-family dwellings in this state.

In crafting its ruling against Amerigas, the circuit court appears to have been concerned that the consequences of upholding the application of § 1.5 under the facts of the underlying case would be dire, at best. We wish to stress that our ruling in this case should not be construed as sanctioning the installation of propane tanks or gas lines by Amerigas, or other similar entities, in a fashion that conflicts with applicable safety regulations and laws or prudent industry practices suggested by the particular circumstances of each case.[26] There are other codes besides the state fire code that govern the conduct of entities such as Amerigas. For example, the state building code, which has been adopted by three counties and forty-nine cities and towns has controlling provisions addressing the depth at which propane lines are to be buried.[27] We note additionally that Ameri-

---

26. The pleadings filed in this case include the assertion by the Appellees (plaintiffs below) of additional theories of recovery against Amerigas that are grounded in common law negligence and strict liability. We take no position on the merit of such claims.

27. The state building code currently requires a twelve-inch underground burial line depth or

gas' own internal operating procedures required compliance with the state fire code.

Based on the above discussion, we answer the first certified question in the negative; the second certified question in the positive; and based on our response to the second certified question, we do not answer the third certified question.

Certified questions answered.

burial in a conduit at a shallower depth if the

twelve-inch depth cannot be accomplished.