# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs)  No. 15-0470**      (Hardy County 15-MAP-3)

**Jesse Allan Burns,**
**Richard Kuykendall,**
**Joseph Kidwell, and**
**Randall Buckley,**
**Defendants Below, Petitioners**

**FILED**

**May 20, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioners and defendants below, Jesse Allan Burns, Richard Kuykendall, Joseph Kidwell, and Randall Buckley, by counsel Nicholas T. James and Daniel R. James, jointly appeal the May 11, 2015, amended order of the Circuit Court of Hardy County affirming petitioners' convictions and the sentences imposed by the magistrate court following a jury trial. Petitioners Burns, Kuykendall, and Kidwell were found guilty of "Conspiracy to Violate Chapter 20," while Petitioner Buckley was convicted of "Feeding a Bear" and "Feeding Wildlife in a Containment Area." The State of West Virginia, by counsel Shannon Frederick Kiser, filed a response in support of the circuit court's order. Petitioners filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On August 23, 2013, West Virginia Division of Natural Resources ("DNR") officers received information from a confidential informant of a possible bear bait site located on Nathaniel Mountain Road in the Ashton Woods Subdivision in Hardy County. The subject property belonged to Petitioner Buckley. Officers investigated, located the bait site, and set up hidden cameras. According to Officer M.W. Lindale, the bait site consisted of a pile of logs and rocks and downed trees with pastries or donuts underneath such that only a large animal such as a bear would be capable of moving the debris in order to reach the bait. Bear droppings were found near the site.

The DNR officers returned to the bait site on September 20, 2013, and found that it had been freshly baited with a pastry-like substance, and also found that a game camera had been hung directly over the site. The officers returned the following morning at approximately 5:00

1

a.m. At approximately 6:15 a.m., two vehicles slowly drove by the bait site. After one of the vehicles released hunting dogs,[1] Petitioner Buckley emerged from one of the vehicles and walked toward the bait site with a flashlight; thereafter, other hunters exited the vehicles, and additional dogs were released.[2] When approached by the officers, Petitioner Buckley stated that the bait site was intended to bait coyote and not bear.

Petitioners were cited for (1) hunting bear by the use of bait, (2) hunting bear before legal hunting hours, (3) conspiring to violate Chapter 20,[3] (4) feeding bear, and (5) feeding wildlife in a CWD containment area.[4] A jury trial in the Magistrate Court of Hardy County was held on July 21, 2015. Petitioners elected to be tried together. The State's case-in-chief included photographs of the bait site and testimony from the investigating DNR officers that the bait site and other evidence was consistent with bear baiting. Petitioners moved for judgment of acquittal, which was granted as to the hunting before legal hunting hours charge. Petitioners did not testify.

Upon conclusion of the trial, the jury found Petitioners Burns, Kuykendall, and Kidwell guilty of conspiracy to violate Chapter 20, and Petitioner Buckley guilty of feeding bear and feeding wildlife in a containment area. Petitioners were found not guilty of hunting bear by the use of bait. Petitioners Burns, Kuykendall, and Kidwell were each fined $300; Petitioner Buckley was fined $300 for his conviction of feeding bear and was ordered to serve ten days in jail, over the weekends, for his conviction of feeding wildlife in a containment area. Petitioners appealed their convictions to the circuit court, which affirmed the convictions by order entered May 12, 2015.[5] This appeal followed.

Our standard of review of the circuit court's order affirming petitioners' convictions and sentences was set forth in syllabus point three of *State v. Vance* as follows:

---

[1] The dogs were identified by a DNR officer as bear hunting dogs; however, Petitioner Buckley claimed that the dogs were coyote hunting dogs.

[2] Three hunters other than petitioners were also present at the bait site but are not parties herein.

[3] Chapter 20 of the West Virginia State Code was "enacted to provide a comprehensive program for the exploration, conservation, development, protection, enjoyment and use of the natural resources of the State of West Virginia . . . ." W.Va. Code § 20-1-1. West Virginia Code § 20-7-7 states, in relevant part, that "[a]ny person who shields or conspires with another in the commission of a violation of any of the provisions of this chapter . . . shall be guilty of a misdemeanor."

[4] A "containment area" is one designated by the DNR Director "where wildlife has been found to be infected with a contagious or infectious disease. The purpose of a containment area is to manage, control, eradicate and/or prevent the spread of the disease." 58 C.S.R. § 69-2.3. "CWD" is "chronic wasting disease," which is "an infectious neurological disease of cervids," such as deer and elk. 58 C.S.R. § 69-2.4.

[5] Petitioner Buckley also moved for alternative sentencing, which the circuit court denied in the May 12, 2015, order.

2

In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

207 W.Va. 640, 535 S.E.2d 484 (2000).

On appeal, Petitioners Burns, Kuykendall, and Kidwell argue that the circuit court erred in affirming their convictions because the jury verdicts were inconsistent. They argue that their conspiracy convictions should be reversed because the State failed to secure a conviction on the substantive charge of hunting bear by the use of bait. Petitioners further argue that, even if the verdicts are consistent, the evidence was insufficient to convict them. Based upon our review of the record herein, we find no error.

This Court has held that, "[i]n order for the State to prove a conspiracy . . . it must show that the defendant agreed with others to commit an offense against the State and that some overt act was taken by a member of the conspiracy to affect the object of that conspiracy." Syl. Pt. 4, in part, *State v. Less*, 170 W.Va. 259, 294 S.E.2d 62 (1981). Petitioners' argument that there can be no conspiracy conviction without a conviction on the substantive offense is without merit. Conspiracy to commit a violation of Chapter 20 is an offense separate and apart from the substantive offense. Petitioners offer no supporting legal authority suggesting that a conviction on the latter is required for a conviction on the former. *Cf. State v. Johnson*, 179 W.Va. 619, 631, 371 S.E.2d 340, 352 (stating that "[i]t is settled law that conspiracy and the underlying substantive offense are separate and distinct offenses for double jeopardy purposes."). Thus, we conclude that Petitioners Burns, Kuykendall, and Kidwell's convictions for conspiring to violate Chapter 20 are not inconsistent with the jury's not guilty verdict on the offense of hunting bear by the use of bait.

With regard to Petitioners Burns, Kuykendall, and Kidwell's argument that the evidence at trial was insufficient to prove a conspiracy, this Court's appellate function

is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. Pt. 1, in part, *State v. Guthrie* 194 W.Va. 657, 461 S.E.2d 163 (1995). In this regard, petitioners carry a heavy burden:

A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the

3

prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.

*Id.* at 663, 461 S.E.2d at 169, at syl. pt. 3. Petitioners contend that there was no evidence that any of them made an agreement or overtly acted to effect hunting bear by the use of bait. We disagree.

The State's evidence established that, in the early morning hours of September 21, 2013, DNR officers observed petitioners (and others) patrolling an obvious bear bait site in two vehicles. Two hunting dogs were released from one of the vehicles. After Petitioner Buckley emerged from one of the vehicles with a flashlight and began walking towards the bait site, Petitioners Burns, Kuykendall, and Kidwell also exited the vehicles and additional dogs were released from the vehicles within sixty yards of the bait site. DNR Officer Lindale testified that the bait site consisted of large rubble placed over pastry that was consistent with a bait site intended to lure a bear. Photographs of the bait site were also admitted into evidence. According to Officer Lindale,

they physically piled large rocks and large limbs . . . on top of the bait so a smaller animal can't get to the bait. . . . as far as eating the bait . . . a large bear [is] is the only thing with hands capable of doing it . . . . That a way [sic] you don't have other animals stealing the bait.

Viewing the evidence in the light most favorable to the State, we conclude that there was sufficient evidence of a conspiracy in that the actions of Petitioners Burns, Kuykendall, and Kidwell showed that each agreed with the other to violate the provisions of Chapter 20—that is, to hunt bear by the use of bait—and that an overt act by at least one of them was taken to that end.

Petitioners Burns, Kuykendall, and Kidwell also argue that their convictions of conspiracy to violate Chapter 20 should be reversed on the ground of "impossibility" because they were not charged with violating a specific provision of Chapter 20. Petitioners argue that they were charged with a violation of 58 C.S.R. § 47-3.6, which states that "[i]t is illegal to catch, capture, take, or kill, or attempt to do so, by seine, net, *bait*, trap, deadfall, snare, or like device of any kind, any *bear*, migratory bird, protected bird, protected mammal, or wild boar." (Emphasis added). Petitioners' argument is without merit.

West Virginia Code § 20-1-7(30) authorizes and empowers the DNR Director to

[p]romulgate rules, in accordance with the provisions of chapter twenty-nine-a of this code, to implement and make effective the powers and duties vested in him or her by the provisions of this chapter and take such other steps as may be

4

necessary in his or her discretion for the proper and effective enforcement of the provisions of this chapter.

This Court has declared that "'[a] regulation that is proposed by an agency and approved by the Legislature is a 'legislative rule' as defined by the State Administrative Procedures Act, . . . and such a legislative rule has the force and effect of law.' Syl. Pt. 5, *Smith v. West Virginia Human Rights Commn.,* 216 W.Va. 2, 602 S.E.2d 445 (2004)." Syl. Pt. 4, in part, *Swiger v. UGI/AmeriGas, Inc.*, 216 W.Va. 756, 613 S.E.2d 904 (2005). Furthermore, "[o]nce the . . . agency has made and adopted valid rules and regulations pursuant to the grant of the legislative powers, they take on the force of statutory law. See 2 Am.Jur.2d, Administrative Law §§ 292-295 (1964)." *State ex rel. Barker v. Manchin*, 167 W.Va. 155, 169, 279 S.E.2d 622, 631 (1981).

The rule that prohibits the hunting of bear by the use of bait, 58 C.S.R. § 47-3.6, is promulgated pursuant to the DNR Director's authority as set forth in West Virginia Code § 20-1-7(30). In conspiring to violate 58 C.S.R. § 47-3.6, petitioners necessarily conspired to violate Chapter 20.

Next, Petitioner Buckley argues that the circuit court erred in affirming his convictions of feeding a bear, in violation of 58 C.S.R § 47-3.12,[6] and feeding wildlife in a containment area, in violation of 58 C.S.R. § 69-4.[7] He argues that his actions do not comport with the definition of the term "feeding," which means "the direct or indirect placing, exposing, depositing, distributing, or scattering of bait so as to constitute for wildlife a lure, attraction, or enticement to or on any areas where hunters are attempting to take them." 58 C.S.R. § 69-2.1. Petitioner Buckley contends that the evidence showed that he parked his truck approximately sixty yards from the pastry substance located in the bait site, that he did not have a weapon when he exited the truck, and that none of his hunting dogs ran towards the bait site when they were released from the truck. He further contends that he was attempting to feed a coyote and denies that he was feeding or baiting bear.[8] Given these facts, Petitioner Buckley argues, the State failed to prove that he violated either 58 C.S.R § 47-3.12 or 58 C.S.R. § 69-4.

Despite Petitioner Buckley's argument to the contrary, the evidence showed that the bait site was consistent with one intending to lure a bear and not, as he claims, a coyote. The evidence showed that the large logs and rocks placed over pastry could not have been removed by a coyote; to the contrary, the investigating DNR officers testified that the bait site was constructed in such a way as to prevent smaller animals such as coyotes from accessing the bait. The officers further testified that meat, rather than pastry, is typically used to bait coyote. Viewing this evidence in the light most favorable to the State, we conclude that the evidence was

---

[6] 58 C.S.R. § 47-3.12 states that "[i]t is illegal for any person to feed bears at any time."

[7] 58 C.S.R. § 69-4.1 states, in relevant part, that "[i]t is illegal to feed cervids or other wildlife in a containment area as determined by the Director and established for the management, control or eradication of chronic wasting disease . . . or other wildlife diseases." Petitioner Buckley does not dispute that the bait site was located in a designated CWD containment area.

[8] It appears undisputed that it is not illegal to feed a coyote in a containment area.

sufficient to convict Petitioner Buckley of feeding a bear and feeding wildlife in a containment area, in violation of 58 C.S.R § 47-3.12 and 58 C.S.R. § 69-4, respectively.

Petitioners' next assignment of error is that the magistrate court committed error in allowing DNR Officer R.W. Nelson to testify at trial that he had photographs of a bear on the DNR's trail cameras even though, during discovery, the State failed to produce any pictures of a bear taken with the DNR's cameras. At trial, Officer Nelson testified that the photographs no longer existed, explaining that they were not saved or printed and that the cameras were knocked over and even "chewed up" by the bear. Officers Nelson and Lindale both testified that the purpose of placing the cameras around the bait site was not to photograph bears, but to obtain evidence of vehicles that were going to and from the bait site and "possibly get a [license] plate number off the vehicle to identify them."

Petitioners timely objected to Officer Nelson's testimony on the grounds of spoliaton of evidence by the State. They argue that the magistrate court committed reversible error by overruling their objection and admitting Officer Nelson's testimony that he had a photograph of a bear. We find no error.

This Court has long held that "'[a] trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard.' Syllabus point 4, *State v. Rodoussakis,* 204 W.Va. 58, 511 S.E.2d 469 (1998)." Syl. Pt. 11, *State v. White*, 228 W.Va. 530, 722 S.E.2d 566 (2011). *See also* Syl. Pt. 1, in part, *McDougal v. McCammon*, 193 W.Va. 229, 455 S.E.2d 788 (1995) (holding that "rulings on the admissibility of evidence . . . are committed to the discretion of the trial court"); Syl. Pt. 4, *State v. Brown*, 177 W. Va. 633, 355 S.E.2d 614 (1987) (holding that "'"[t]he action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion." Syllabus Point 10, *State v. Huffman,* 141 W.Va. 55, 87 S.E.2d 541 (1955).' Syllabus Point 4, *State v. Ashcraft,* 172 W.Va. 640, 309 S.E.2d 600 (1983).").

With regard to the spoliation of evidence, this Court held, in syllabus point two of *State v. Osakalumi*, that

> [w]hen the State had or should have had evidence requested by a criminal defendant but the evidence no longer exists when the defendant seeks its production, a trial court must determine (1) whether the requested material, if in the possession of the State at the time of the defendant's request for it, would have been subject to disclosure under either *West Virginia Rule of Criminal Procedure* 16 or case law; (2) whether the State had a duty to preserve the material; and (3) if the State did have a duty to preserve the material, whether the duty was breached and what consequences should flow from the breach. In determining what consequences should flow from the State's breach of its duty to preserve evidence, a trial court should consider (1) the degree of negligence or bad faith involved; (2) the importance of the missing evidence considering the probative value and reliability of secondary or substitute evidence that remains available;

6

and (3) the sufficiency of the other evidence produced at the trial to sustain the conviction.

194 W.Va. 758, 461 S.E.2d 504 (1995).

Assuming, *arguendo*, that, under *Osakalumi*, the requested photographs would have been subject to disclosure, that the State had a duty to preserve the photographs, and that the State breached that duty, it is clear that the consequences that should flow therefrom are nominal. Importantly, proof of the presence of a bear at the bait site or otherwise is not a required element of any of the offenses charged herein. As previously noted, the investigating DNR officers testified that they placed the trail cameras around the site for the purpose of discovering who set the bear bait, not to determine whether a bear had been lured there. Petitioners presented no evidence of bad faith or negligence on the part of the officers in failing to save or print the photographs, or prevent the bear from knocking over or chewing on the camera. Finally, as previously determined herein, the remaining evidence produced at trial was clearly sufficient to sustain petitioners' convictions. Therefore, we find that the magistrate court did not commit error by overruling petitioners' objection to the admission of Officer Nelson's testimony on the ground of spoliation of the evidence.

Next, Petitioner Buckley argues that his sentence of ten days in jail for his conviction of feeding wildlife in a containment area is so disproportionate to the offense that it is constitutionally impermissible. This Court has stated that

> [p]unishment may be constitutionally impermissible, although not cruel or unusual in its method, if it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity, thereby violating West Virginia Constitution, Article III, Section 5 that prohibits a penalty that is not proportionate to the character and degree of an offense.

Syl. Pt. 5, *State v. Cooper*, 172 W.Va. 266, 304 S.E.2d 851 (1983). Petitioner Buckley argues that he was sentenced to jail simply because he exercised his constitutional right to a jury trial and surmises that no one in West Virginia has ever before served time in jail for a conviction of this offense. He further contends that other, more egregious crimes such as first offense driving under the influence result in the imposition of fines rather than a jail sentence.[9]

This Court has long held that "[s]entences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review." Syl. Pt. 4, *State v. Goodnight*, 169 W.Va. 366, 287 S.E.2d 504 (1982). It is undisputed that Petitioner Buckley's sentence was within the statutory limits, and, further, there is no evidence that his sentence was based on some impermissible factor. Petitioner Buckley was sentenced to the

---

[9] Petitioner Buckley states that he has never before been convicted of a hunting violation nor has he ever "spent a day in jail."

minimum jail sentence allowed by the applicable statute.[10] Thus, we find no error in the magistrate court's imposition of a ten-day sentence or in the circuit court's order affirming the same.

In their final assignment of error, petitioners argue that their motion to disqualify the presiding magistrate in this case should have been granted by the circuit court prior to trial. Petitioners contend that one of the investigating DNR officers in this case, Officer Dawson, is the spouse of the presiding magistrate's assistant and that the magistrate should have disqualified himself so as to avoid even the appearance of impropriety. *See* Canon 2(A), West Virginia Code of Judicial Conduct. We review the circuit court's ruling for an abuse of discretion. *See* Syl. Pt. 3, *State ex rel. Hendricks v. Hrko*, 189 W.Va. 674, 434 S.E.2d 34 (1993) (holding that "[a] decision of a circuit court upon review of a motion to disqualify a family law master will be affirmed by the West Virginia Supreme Court of Appeals absent an abuse of discretion.").

Our review of petitioners' motion to disqualify reveals that it was based solely upon an implied partiality on the part of the presiding magistrate based upon the marital relationship of his assistant and one of the investigating officers. Petitioners presented no evidence showing any actual bias or prejudice or that the magistrate was not otherwise neutral and detached. *See* Syl. Pt. 4, *State ex rel. Brown v. Dietrick*, 191 W.Va. 169, 444 S.E.2d 47 (1994) (holding that "[t]he fact that a magistrate's spouse is the chief of police of a small police force does not automatically disqualify the magistrate, who is otherwise neutral and detached, from issuing a warrant sought by another member of such police force."). We, thus, find no error in the circuit court's ruling that denied petitioners' motion to disqualify the presiding magistrate in this case.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED: May 20, 2016**

**CONCURRED IN BY:**

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II

---

[10] *See* West Virginia Code § 20-7-9 (providing, in part, that "[a]ny person violating any of the provisions of this chapter or rules promulgated under the provisions of this chapter, the punishment for which is not prescribed, shall be guilty of a misdemeanor and, upon convictions thereof, shall for each offense be fined not less than twenty nor more than three hundred dollars or confined in jail not less than ten or more than one hundred days, or be both fined and imprisoned within the limitations aforesaid . . . .").