297 S.E.2d 825

**STATE of West Virginia**

v.

**Charles Joseph COX aka Charles Joseph Messoria.**

**No. 15395.**

Supreme Court of Appeals of West Virginia.

Oct. 28, 1982.

Rehearing Denied Dec. 15, 1982.

Charles L. Ihlenfied, Wheeling, for appellant.

Chauncey H. Browning, Atty. Gen. and Laurie J. Garrigan, Asst. Atty. Gen., Charleston, for appellee.

PER CURIAM:

The appellant, Charles Joseph Cox, aka Charles Joseph Messoria, was convicted of breaking and entering in the Circuit Court of Wetzel County and was subsequently sentenced to an indeterminate term of one to ten years in the state penitentiary. In this appeal, he contends, *inter alia,* that the circuit court erred in allowing his in-court identification by a police officer for the City of New Martinsville. For the reasons set forth below, we find appellant's contentions to be without merit and we affirm the judgment of the trial court.

At approximately 1:30 a.m. on May 30, 1979, a breaking and entering occurred at the Classic Food Market in New Martinsville, West Virginia. Stephen Caldwell, a witness for the prosecution, heard glass breaking and observed a man carrying a large object exit the market. Caldwell called the New Martinsville police department and, at 1:51 a.m., Officer Michael Johnston arrived at the market.

Johnston looked inside the store and then heard a vehicle's engine start and the squeal of tires. Johnston radioed to Patrolman B.K. Norris who blocked a nearby intersection with his patrol car. As John-

ston drove along Paducah Road near the market, an approaching vehicle turned its lights off and pulled partially off the roadway. Johnston stopped his vehicle, got out and began to walk toward a blue Jeep pickup truck, parked approximately fifteen feet from his patrol car. As the officer approached the Jeep it suddenly accelerated directly toward him, and as he stepped out of the vehicle's path, he noticed a cash register in the truck bed. Johnston was also able to observe the driver of the pickup truck since the headlights of his patrol car illuminated the area.

The fleeing vehicle eluded Norris at the intersection and he and Johnston pursued it until the driver abandoned it and fled. The driver was not found at that time.

New Martinsville Chief of Police Anthony Castranova arrived at the site of the abandoned vehicle just as the license check on the vehicle was completed. Chief Castranova asked Johnston if he knew Charles Joseph Messoria, to whom the vehicle was registered, and finding that he did not, the chief described Messoria to him. Johnston said that the driver he observed fit the chief's description of Messoria.

At about 8:40 a.m. Johnston saw Messoria walking along a roadway away from town. He recognized Messoria and arrested him.

Messoria assigns as error the admission of Johnston's in-court identification of him as the driver of his pickup on the night of the breaking and entering. He also assigns as error the trial court's failure to sustain his motion for a new trial based on improper communications between Chief Castranova and two jurors. Finally, Messoria contends that the trial judge erred in allowing the jury to hear the testimony of Lila Witchey, despite his objection that the state breached its duty to notify him of the possibility that Witchey might be called.

We set forth the test for determining the admissibility of in-court identifications in these circumstances in *State v. Boyd,* 167 W.Va. 385, 280 S.E.2d 669 (1981), citing *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), *State v. Rickman,* 167 W.Va. 128, 278 S.E.2d 880 (1981);

*State v. Williams,* 162 W.Va. 348, 249 S.E.2d 752 (1978); *State v. Kennedy,* 162 W.Va. 244, 249 S.E.2d 188 (1978); and *State v. Casdorph,* 159 W.Va. 909, 230 S.E.2d 476 (1976). In Syllabus point 4 of *Boyd, supra,* we quoted Syl. pt. 3 of *Casdorph, supra:*

In determining whether an out-of-court identification of a defendant is so tainted as to require suppression of an in-court identification a court must look to the totality of the circumstances and determine whether the identification was reliable, even though the confrontation procedure was suggestive, with due regard to such factors as the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

■ An examination of the events surrounding Johnston's encounter with the appellant reveals that his identification of Messoria was reliable. Johnston apprehended the appellant within seven hours of the crime and exhibited no uncertainty then or later that Messoria was the individual driving the pickup truck. The officer was within approximately five feet of the truck when he observed the driver. This observation was aided by the illumination provided from the headlights of the officer's nearby patrol car. Certainly, Johnston's attention could have been focused on little else but the driver of the truck coming directly at him. The totality of the circumstances indicate that Johnston's in-court identification was reliable and that its admission was proper. Any taint which may have resulted from Chief Castranova's description of Messoria was not sufficient to require suppression of the identification upon these facts.

Chief Castranova was subpoenaed as a witness for the prosecution though he did not testify at trial. After a verdict of guilty was returned, Messoria filed a motion for a new trial, alleging improper communication between Chief Castranova and two jurors. Frances Ebert, Messoria's fos-

ter mother, filed an affidavit in support of the motion stating that she had observed Chief Castranova engage in whispered conversation with two female jurors during a recess in the trial.

An evidentiary hearing was held on the alleged improper communications by Chief Castranova. He denied having been in the courthouse on August 13, 1980, the date alleged in Ebert's affidavit. He further denied any communication with any of the jurors at any time during the trial. Ebert's testimony substantially repeated the allegations of her affidavit. The trial judge overruled Messoria's motion.

At the post-trial hearing on Messoria's motion for a new trial, the trial judge heard testimony from Chief Castranova and Frances Ebert.* Ebert had raised Messoria since early childhood, and testified that she stood as a mother to him. Chief Castranova denied engaging in any conversation with jurors. The trial judge weighed the credibility of these two witnesses, and chose to believe Chief Castranova's account. It is fundamental that the credibility of witnesses is a matter for the trier of fact to determine. The trial court's decision to overrule Messoria's motion is amply supported in the record. *See State v. Grimmer*, 162 W.Va. 588, 251 S.E.2d 780, 784 (1979), overruled on other grounds, *State v. Petry*, 166 W.Va. 153, 273 S.E.2d 346 (1980).

Finally, we note Messoria's complaint concerning the state's failure to inform him of its intention to call Lila Witchey as a rebuttal witness. Messoria claimed that shortly before the crime occurred, he was at Witchey's store making a purchase from check-out clerk Melba Pyles, thus making it impossible for him to have committed the breaking and entering. The state called Lila Witchey in an attempt to rebut his alibi. Witchey testified only that Pyles' time card reflected that she had quit

work at 11:00 p.m., May 29. The court, upon reflection, ruled that the state's failure to provide Messoria with Witchey's name violated the court's standing order that the state notify the defense of rebuttal witnesses who may be called if the defendant takes the stand. The trial judge directed that Witchey's testimony be stricken and instructed the jury to disregard it.

Melba Pyles was also a witness, and no challenge is made to her testimony. Her testimony is more damaging to Messoria's alibi than Witchey's. Pyles testified that she left Witchey's after her shift ended at 11:00 p.m. on May 29, and that she did not return, so that it would have been impossible for Messoria to make a purchase from her soon after 1:00 a.m. on May 30.

Messoria argues that the admission of Witchey's testimony was error which the judge's instruction to the jury could not cure. We find that, under the circumstances, any error in initially admitting Witchey's testimony was not prejudicial to Messoria. As we have noted, the doctrine of harmless error is an established part of our criminal law. *State v. Blair*, 158 W.Va. 647, 214 S.E.2d 330 (1975). Any error committed was certainly harmless in view of Pyles' later testimony.

Each of Messoria's assignments being without merit, the judgment of the trial court is affirmed.

Affirmed.

---

* Messoria indicates, in his petition for appeal, that Faye Ann Skinner, a juror, testified at the hearing on his motion. The only record presented to this Court of the hearing is that which accompanies the state's motion to supplement the record. There is no transcript of Skinner's testimony, and, indeed, no indication that she was called as a witness. Naturally, Messoria had an opportunity to make an additional designation within ten days of the state's motion. R.Sup.Ct.App. 8(a)(3). No such additional designation was made, and we must decide the case on the record before us. *See, Parker v. Knowlton Construction Company, Inc.*, 158 W.Va. 314, 210 S.E.2d 918 (1975).