## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Charlton A. Horton, Jr.,**
**Petitioner Below, Petitioner**

**vs)  No. 16-1084**  (Mineral County 06-C-75)

**David Ballard, Warden,**
**Mount Olive Correctional Complex,**
**Respondent Below, Respondent**

**FILED**

**October 20, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Charlton A. Horton, Jr., by counsel Nicholas T. James, appeals the November 1, 2016, order of the Circuit Court of Mineral County that denied his amended petition for writ of habeas corpus subjiciendum following his conviction by a jury of first degree murder. Petitioner was sentenced to life in prison without the possibility of parole. David Ballard, Warden, Mount Olive Correctional Complex, by counsel Shannon Frederick Kiser, filed a response in support of the circuit court's order. Petitioner submitted a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On October 4, 1995, petitioner was convicted by a jury in the Circuit Court of Mineral County of the first degree murder of Arthur Samuel Smith, Jr., who was beaten to death with a blunt instrument in the early morning hours of January 8, 1994, in Keyser, West Virginia.[1] Petitioner and his co-defendant were identified as the perpetrators by a witness who, from the upstairs window of his apartment, saw two black men in dark bulky coats striking something on the ground with a stick or club near a church. The witness called police who, when they arrived, discovered the victim's body. Petitioner and his co-defendant were spotted in the area near the crime scene and were picked up by police because they matched the eyewitness's description of the suspects.

Police tested articles of clothing that were worn by petitioner and his co-defendant that night. Trooper H.B. Myers of the West Virginia State Police conducted serological testing on a

---

[1] *See State v. Horton*, 203 W. Va. 9, 506 S.E.2d 46 (1998) (affirming the murder convictions of petitioner and his co-defendant).

1

piece of flesh that was found on the baseball cap that petitioner's co-defendant was wearing and it was found to have the same genotype as the victim. Serological testing by Myers on petitioner's jeans was inconclusive, but Brian Wraxall of the Serological Research Institute in California identified Polymerase Chain Reaction ("PCR") markers that were consistent with the victim's DNA from blood found on the jeans and that occur in approximately one in 6.25 million persons in the Caucasion population.[2]

Petitioner's direct appeal was denied by this Court on June 22, 1998.[3] *See* n.1. On August 29, 2005, petitioner filed a pro se petition for writ of habeas corpus. Though counsel was appointed, no amended petition was filed. The circuit court denied petitioner's pro se request for habeas relief. This Court then refused petitioner's appeal of the same.

On July 19, 2006, petitioner filed a second petition for writ of habeas corpus alleging that the DNA evidence presented at his murder trial proved that he did not kill the victim, and that Trooper Myers falsified evidence and presented false testimony about the serology and DNA test results. The circuit court entered an order appointing counsel to file an amended petition and ordered that "the Court will only consider the sole issue of whether evidence was falsely acquired or presented during the Petitioner's trial." *See In re Renewed Investigation of State Police Crime Laboratory, Serology Division* ("*Zain III*"), 219 W. Va. 408, 633 S.E.2d 762 (2006).

On November 30, 2006, petitioner, by counsel, filed an amended habeas petition on the same grounds. On December 6, 2006, the State filed a response.[4]

Meanwhile, petitioner, along with his co-defendant, filed a joint motion for DNA testing of petitioner's boots or pants and the co-defendant's cap, pursuant to West Virginia Code § 15-28-14. They argued that an independent DNA test had never been conducted in this case; that there was possible contamination of the serological evidence when it was done in 1994; that testing procedures may not have been appropriately followed when the testing was done; that Trooper Myers is alleged to have provided false serology evidence in another, unrelated criminal case; and that DNA testing is relevant to their claims that they are innocent of the crime for which they were convicted. The State filed a response opposing the request for DNA testing.

---

[2] The victim was white.

[3] At trial, in addition to the serological and DNA evidence, the State introduced evidence that, a few nights before the murder, petitioner's co-defendant had asked another man if he could borrow his baseball bat; that the man agreed; and that the bat went missing the next day. (The murder weapon was never found). The evidence also revealed that, a few months before the crime, petitioner's co-defendant had threatened the victim because the victim had kissed the co-defendant's teenage sister on the cheek. *See Horton*, 203 W. Va. at 14, 506 S.E.2d at 51.

[4] Petitioner's habeas petition and that of his co-defendant were merged for purposes of an evidentiary hearing.

A hearing was conducted on August 22, 2016, approximately ten years after petitioner filed his second request for habeas relief. Trooper Myers was the only witness. By order entered October 31, 2016, the circuit court denied petitioner's request for habeas relief and for DNA testing. This appeal followed.

Our review of the circuit court's order denying petitioner's petition for a writ of habeas corpus is governed by the following standard:

> "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syllabus point 1, *Mathena v. Haines,* 219 W.Va. 417, 633 S.E.2d 771 (2006).

Syl. Pt. 1, *State ex rel. Franklin v. McBride*, 226 W. Va. 375, 701 S.E.2d 97 (2009).

In his first assignment of error, petitioner argues that the circuit court erred in failing to grant him habeas relief. He contends that he demonstrated that Trooper Myers presented false serology evidence at trial and that he was entitled to a new trial. In syllabus point four of *Zain III*, this Court held as follows:

> A prisoner against whom a West Virginia State Police Crime Laboratory serologist, other than Fred Zain, offered evidence and who challenges his or her conviction based on the serology evidence is to be granted a full habeas corpus hearing on the issue of the serology evidence. The prisoner is to be represented by counsel unless he or she knowingly and intelligently waives that right. The circuit court is to review the serology evidence presented by the prisoner with searching and painstaking scrutiny. At the close of the evidence, the circuit court is to draft a comprehensive order which includes detailed findings as to the truth or falsity of the serology evidence and if the evidence is found to be false, whether the prisoner has shown the necessity of a new trial based on the five factors set forth in the syllabus of *State v. Frazier,* 162 W.Va. 935, 253 S.E.2d 534 (1979).

219 W. Va. at 409, 633 S.E.2d at 763.[5]

_____

[5] In 1993, an investigation revealed that Fred Zain, a serologist in the State Police Crime Lab, had "intentionally and systematically [given] inaccurate, invalid, or false testimony or reports" in criminal prosecutions. *Zain III*, 219 W. Va. at 410, 633 S.E.2d at 764 (citing *In Matter of West Virginia State Police Crime Laboratory (“Zain I”)*, 190 W.Va. 321, 438 S.E.2d 501 (1993)). As a result of this investigation, this Court concluded that, as a matter of law, any evidence offered by Zain in any criminal prosecution was presumptively

> "invalid, unreliable, and inadmissible in determining whether to award a new trial
> in any subsequent habeas corpus proceeding. The only issue in any habeas corpus
(continued . . .)

3

Petitioner argues that he satisfied the five factors set forth in *Frazier* such that his habeas request should have been granted and a new trial ordered. In the syllabus of *Frazier*, this Court held:

> "A new trial will not be granted on the ground of newly-discovered evidence unless the case comes within the following rules: (1) The evidence must appear to have been discovered since the trial, and, from the affidavit of the new witness, what such evidence will be, or its absence satisfactorily explained. (2) It must appear from facts stated in his affidavit that plaintiff was diligent in ascertaining and securing his evidence, and that the new evidence is such that due diligence would not have secured it before the verdict. (3) Such evidence must be new and material, and not merely cumulative; and cumulative evidence is additional evidence of the same kind to the same point. (4) The evidence must be such as ought to produce an opposite result at a second trial on the merits. (5) And the new trial will generally be refused when the sole object of the new evidence is to discredit or impeach a witness on the opposite side." Syllabus Point 1, *Halstead v. Horton*, 38 W.Va. 727, 18 S.E. 953 (1894).

162 W.Va. at 935-36, 253 S.E.2d at 534-35. Importantly, this Court has declared that "all five elements must be satisfied." *Id.* at 941, 253 S.E.2d at 537.

First, petitioner argues that Trooper Myers falsified serology evidence and that this evidence was discovered after the trial, satisfying the first factor in *Frazier*. In support of this claim, petitioner argues that, at the habeas hearing, Trooper Myers failed to definitively state that he did *not* provide false evidence at petitioner's trial; that, according to a report cited in *Zain III*, Trooper Myers, an assistant to Zain, was one of the serologists who reported and testified to "nonexistent serology testing;" and that Myers's denial at petitioner's habeas hearing that he has read any of the *Zain* opinions issued by this Court is simply not believable and is, instead,

---

> proceeding would be whether the evidence presented at or prior to trial or prior to the entry of a guilty plea, independent of the forensic evidence presented by Zain, would have been sufficient to support the verdict or plea."

*Zain III*, 219 W. Va. at 410, 633 S.E.2d at 765 (quoting *Zain I*, 190 W.Va. at 340, 438 S.E.2d at 520.).

Subsequently, this Court issued *In Matter of West Virginia State Police Crime Lab("Zain II")*, 191 W. Va. 224, 445 S.E.2d 165 (1994), regarding whether serologists other than Fred Zain falsified evidence in criminal prosecutions as Zain had done. We concluded that, although there were occasional minor errors made, they "did not significantly compromise the criminal prosecutions in which the serologists offered evidence." *Zain III*, 219 W. Va. at 411, 633 S.E.2d at 765. This Court thus concluded that serology reports prepared by Crime Lab employees other than Zain "'are not subject to the invalidation and other strictures contained in" *Zain I*. *Zain III*, 219 W.Va. at 411, 633 S.E.2d at 765 (quoting *Zain II*, 191 W.Va. at 225, 445 S.E.2d at 166, at syl. pt. 3, in part.) *Zain III* resulted from yet another investigation into allegations of nonexistent serology test results and trial testimony by serologists other than Fred Zain. *See* discussion, *infra.*

illustrative of Myers's lack of credibility in the present case. Additionally, petitioner argues that Trooper Myers admitted that there was "insufficient documentation" and that he should have taken more notes during the course of testing in this case; that he intentionally failed to take proper notes in order to conceal fabricated test results; and that, in essence, the California lab was able to achieve positive test results only after Myers "obtained a second vial of the victim's post[]mortem blood from the Medical Examiner's offices and had in his possession the Petitioner's jeans for seven (7) months. Petitioner submits that Trooper Myers contaminated the evidence and covered it up by not making copious notes and records." Finally, petitioner references, as he did below, a federal magistrate judge's findings in an unrelated habeas case that Myers gave false testimony in the underlying trial in that matter and that this is evidence that petitioner gave false testimony in petitioner's criminal trial. *See Thomas v. Trent, Warden*, Civil Action No. 2:98-0912 (S.D.W.Va., April 28, 1999).[6]

Notwithstanding petitioner's argument to the contrary, we conclude that petitioner failed to satisfy the first factor of *Frazier*—that is, that falsified serological evidence was discovered after trial. First, petitioner failed to show that the evidence was fabricated or contaminated or even that the procedures used in the original testing were invalid or unreliable. Petitioner's arguments are highly speculative and tenuous and not based in fact. *See State ex rel. Burdette v. Zakaib*, 224 W. Va. 325, 332, 685 S.E.2d 903, 910 (2009) (stating that "[a] defendant simply cannot make unsupported and blanket allegations and expect a circuit court to grant him a new trial."). Also speculative is petitioner's claim that Trooper Myers's testimony was not credible. The circuit court expressly found that Myers's testimony was both credible and believable. The determination of Trooper Myers's credibility as a witness in petitioner's habeas proceeding was properly made by the circuit court, which "had the opportunity to observe, first hand, the demeanor of the witness." *Miller v. Chenoweth*, 229 W. Va. 114, 121, 727 S.E.2d 658, 665 (2012). *See also State v. Cox*, 171 W. Va. 50, 53, 297 S.E.2d 825, 828 (1982) (declaring that "[i]t is fundamental that the credibility of witnesses is a matter for the trier of fact to determine.").

Not only did petitioner fail to show that the serological evidence was false, but he also failed to prove that the evidence was discovered after trial. Petitioner does not dispute that Trooper Myers's report and findings were the subject of cross-examination at the criminal trial, which occurred following the investigation into the misconduct by Zain and resulting opinions by this Court. *See Zain I* and *Zain II*. Nor does he dispute that, at trial, Myers testified regarding the potential for contamination and cross-contamination of the evidence, as did Mr. Wraxall, who separately tested the evidence while being observed by a third, independent expert. Therefore, the serological evidence that is the subject of this appeal was not discovered after trial and, thus, fails to satisfy the first of the five factors set forth in *Frazier*.

Having failed to satisfy one of the *Frazier* factors, petitioner thus failed to establish that he is entitled to a new trial. *See Frazier,* 162 W. Va. at 941, 253 S.E.2d at 537 (declaring that "all

---

[6] Upon de novo review of the magistrate judge's findings and recommendations, the United States District Court for the Southern District of West Virginia refused to adopt the same and, instead, denied habeas relief. *See Thomas v. Trent, Warden*, Civil Action No. 2:98-0912 (S.D.W.Va., August 17, 1999).

five elements must be satisfied."). Nonetheless, we briefly note that petitioner also failed to satisfy the *Frazier* factor requiring that "the evidence must be such as ought to produce an opposite result at a second trial on the merits." *Id.* at 935, 253 S.E.2d at 535, at syllabus, in part. Even if the serological evidence were disregarded as false or tainted, an opposite result at a subsequent trial would not be assured. An eyewitness placed two black men matching descriptions of petitioner and his co-defendant at the place where the victim's body was found by police after being beaten to death with a blunt instrument. The men were seen repeatedly striking something on the ground with a club or a stick. Although the murder weapon was never recovered, a few nights before, petitioner's co-defendant had asked another man if he could borrow his baseball bat. The man agreed and the bat went missing the next day. The evidence also showed that, a few months before the murder, petitioner's co-defendant had threatened the victim because the victim had kissed the co-defendant's sister on the cheek. Further, serological testing of a piece of flesh that was found on the baseball cap that petitioner's co-defendant was wearing was found to have the same genotype as the victim. Given this evidence, the *Frazier* factor requiring that the evidence must produce an opposite result at a subsequent trial is also not satisfied. Thus, for this additional reason, the circuit court did not err in denying petitioner's requests for habeas relief and a new trial.

In a related assignment of error, petitioner argues that the circuit court erred in failing to review the serology evidence with "searching and painstaking scrutiny" and in failing to draft a comprehensive order with detailed findings and conclusions, all of which is required under syllabus point four of *Zain III*. 219 W. Va. at 409, 633 S.E.2d at 763. Petitioner posits that the circuit court simply "rubber stamped" the order prepared by the State, which he contends is "general" and failed to address in detail how the serology evidence was not false. We find no error.

This Court has determined that a circuit court's adoption of a party's proposed order does not constitute reversible error. *State ex rel. Cooper v. Caperton*, 196 W. Va. 208, 214, 470 S.E.2d 162, 168 (1996). "Rather, 'even when the trial judge adopts proposed findings verbatim, the findings are those of the court and may be reversed only if clearly erroneous.' *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 572, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518, 527 (1985)." *Cooper*, 196 W. Va. at 214, 470 S.E.2d at 168. Indeed, the "clear message" is thus: "As an appellate court, we concern ourselves not with who prepared the findings for the circuit court, but with whether the findings adopted by the circuit court accurately reflect the existing law and the trial record." *Id.*

In this case, the circuit court's order denying petitioner the requested relief adequately addressed and resolved the issues raised by petitioner, including his primary claim that Trooper Myers was not a credible witness and that he fabricated evidence and presented false testimony at the criminal trial. We, therefore, find petitioner's assignment of error in this regard to be without merit.

We next address petitioner's argument that the circuit court erred in denying his request for additional DNA testing of his jeans and jacket under West Virginia Code § 15-2B-14.[7]

_____

[7] West Virginia Code § 15-2B-14 (a) provides that "[a] person convicted of a felony currently serving a term of imprisonment may make a written motion before the trial court that (continued . . .)

Petitioner contends that independent testing has never been conducted at his request and reiterates that Trooper Myers falsified the evidence on petitioner's jeans as "it was only after Trooper Myers obtained the victim's post[]mortem blood and had Petitioner's jeans in his possession for seven (7) months that Mr. Wraxall in California obtained conclusive results after performing the same tests as Trooper Myers."

This Court has made clear that its ruling in *Zain III*

does not afford every petitioner with alleged serology issues the right to additional DNA testing. In order to have the right to additional DNA testing, the evidence sought to be tested must likely produce an opposite result if a new trial were to occur, and the evidence cannot be such that its purpose is merely to impeach or discredit a State's witness.

*Burdette*, 224 W. Va. at 327, 685 S.E.2d at 905, at syl. pt. 6, in part. Furthermore,

---

entered the judgment of conviction for performance (DNA) testing." Furthermore,

(f) The court shall grant the motion for DNA testing if it determines all of the following have been established:
(1) The evidence to be tested is available and in a condition that would permit the DNA testing requested in the motion;
(2) The evidence to be tested has been subject to a chain of custody sufficient to establish it has not been substituted, tampered with, replaced or altered in any material aspect;
(3) The identity of the perpetrator of the crime was, or should have been, a significant issue in the case;
(4) The convicted person has made a prima facie showing that the evidence sought for testing is material to the issue of the convicted person's identity as the perpetrator of or accomplice to, the crime, special circumstance, or enhancement allegation resulting in the conviction or sentence;
(5) The requested DNA testing results would raise a reasonable probability that, in light of all the evidence, the convicted person's verdict or sentence would have been more favorable if DNA testing results had been available at the time of conviction. The court in its discretion may consider any evidence regardless of whether it was introduced at trial;
(6) The evidence sought for testing meets either of the following conditions:
(A) The evidence was not previously tested;
(B) The evidence was tested previously, but the requested DNA test would provide results that are reasonably more discriminating and probative of the identity of the perpetrator or accomplice or have a reasonable probability of contradicting prior test results[.]

7

[i]n accordance with West Virginia Code § 15-2B-14 (2004), the West Virginia Legislature provides a defendant the absolute right to ask for DNA testing; however, it does not provide a defendant the absolute right to have DNA testing conducted.

*Burdette.*, 224 W.Va. at 327, 685 S.E.2d at 905, at syl. pt. 7.

Petitioner failed to demonstrate that the evidence sought to be tested would likely produce an opposite result if a new trial were conducted. As previously established, petitioner's theory that Trooper Myers fabricated or otherwise contaminated serology evidence is highly speculative as it is largely derived from reports and findings in cases unrelated to his own. He further failed to show that the testing conducted by Myers and presented at trial were falsified or otherwise unreliable or invalid. Accordingly, we find no error in the circuit court's conclusion that petitioner was not entitled to additional DNA testing.

Finally, we address petitioner's argument that the circuit court failed to timely hear his habeas petition challenging the serology evidence. This Court has held that

[a] circuit court that receives a petition for a writ of habeas corpus from a prisoner against whom a West Virginia State Police Crime Laboratory serologist, other than Fred Zain, offered evidence, and whose request for relief is grounded on the serology evidence, is to hear the prisoner's challenge in as timely a manner as is reasonably possible.

*Zain III*, 219 W. Va. at 410, 633 S.E.2d at 764, at syl. pt. 5. Petitioner filed his amended petition for habeas relief on November 30, 2006. However, a hearing was not conducted until August 22, 2016. Petitioner argues that his constitutional right to due process was violated by this unreasonable delay.

On its face, petitioner's habeas request was not heard in a timely manner. However, petitioner fails to point to any facts suggesting that either the State or the circuit court caused the delay or that he was somehow prejudiced as a proximate result thereof. *Cf. State ex rel. Daniel v. Legursky*, 195 W. Va. 314, 325, 465 S.E.2d 416, 427 (1995) (finding that "petitioner eventually got his day in court and we are not told of any prejudice suffered by petitioner that was proximately caused by the delay" where habeas hearing was held six years after trial counsel learned of jury tampering in underlying criminal trial). Given the circuit court's conclusion that petitioner's habeas grounds were without merit, we find that any error caused by the delay in the proceedings, if any error occurred, was harmless.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:**  October 20, 2017

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker